

# In The
# Court of Appeals
# Seventh District of Texas at Amarillo

_____

No. 07-11-00067-CR
_____

HEATHER THOMAS, APPELLANT

V.

THE STATE OF TEXAS, APPELLEE

On Appeal from the 47th District Court
Potter County, Texas
Trial Court No. 59,706-A, Honorable Dan L. Schaap, Presiding

December 13, 2013

OPINION

Before CAMPBELL and HANCOCK and PIRTLE, JJ.

Appellant, Heather Thomas, appeals her conviction for possession of marijuana[1] and subsequent sentence of confinement in the Institutional Division of the Texas Department of Criminal Justice (ID-TDCJ) for 78 months. Appellant contends that the trial court erred in overruling her motion to suppress the evidence of the search. We will reverse and remand.

---

[1] *See* TEX. HEALTH & SAFETY CODE ANN. § 481.121(a), (b)(5) (West 2010).

Factual and Procedural Background

This case is before the Court on remand from the Texas Court of Criminal Appeals. Previously, we held that appellant had waived her objection to the trial court's ruling denying her motion to suppress. *Thomas v. State*, No. 07-11-00067-CR, 2012 Tex. App. LEXIS 7414, at *5 (Tex. App.—Amarillo Aug. 30, 2012, rev'd) (mem. op., not designated for publication). Subsequently, the Texas Court of Criminal Appeals reversed this Court's judgment and remanded the case to this Court to consider appellant's points on appeal. *Thomas v. State*, 408 S.W.3d 877, 888 (Tex. Crim. App. 2013). We will now consider appellant's issues.

Appellant was stopped by Texas Department of Public Safety Highway Patrolman Enoi Phoutthavong on March 29, 2010, while travelling east on Interstate Highway 40 in Potter County, Texas. Phoutthavong testified that he observed appellant's vehicle cross over the solid white line on the shoulder of the highway, referred to as the fog line, on two occasions before deciding to stop appellant. Upon stopping appellant, Phoutthavong noticed that, in his opinion, appellant was extremely nervous. Phoutthavong stated that appellant's hands were visibly shaking when she retrieved her license. Phoutthavong stated that the fact that the car was a one-way rental coming from Phoenix, Arizona, also aroused his suspicion. Additionally, appellant had very little in the way of luggage with her and what she had was in the rear passenger compartment. However, from the food wrappers and containers that could be observed in the front passenger compartment of the vehicle, it was obvious that appellant had eaten while travelling in the car. After making the above observations, Phoutthavong decided to give appellant a warning ticket. The warning ticket was

presented to appellant before Phoutthavong broached the subject of inspection of the trunk of appellant's vehicle.

Phoutthavong requested permission to search the trunk compartment of the car, and appellant refused to give permission. Following this exchange, Phoutthavong called for the assistance of a DPS drug canine unit. According to the testimony at the motion to suppress, the canine unit arrived within a matter of minutes of the request. After the canine unit arrived, the drug dog alerted to the presence of drugs in the trunk of the car. Upon opening the trunk, the contraband, 227.32 pounds of marijuana, was found beneath a blanket.

Appellant filed a motion to suppress the contraband discovered in the trunk of the car she was driving. The trial court heard the motion to suppress and overruled the same. After the trial court overruled the motion to suppress, appellant entered a plea of guilty to the indictment charging possession of marijuana in an amount of less than 2000 pounds but more than 50 pounds. The trial court sentenced appellant to confinement in the ID-TDCJ for seventy-eight months and levied a fine of $2,500.

The trial court issued findings of fact and conclusions of law in support of its decision to deny the motion to suppress. The findings of fact were as follows:

1. Trooper Enoi Phoutthavong on March 29, 2009 was on patrol in a marked patrol car on I-40 at approximately 5:26 p.m. Trooper Phoutthavong has been with the Department of Public Safety for six years and has had substantial experience and training in the interdiction of controlled substances along I-40.

2. Trooper Phoutthavong was traveling eastbound on I-40 when he observed the defendant's vehicle cross across the solid white line (also known as the fog line) on two occasions near the Bushland overpass.

3

3. Trooper Phoutthavong reasonably believed he ha[d] observed a violation of Driving on Improved Shoulder (TEX. TRANS[P]. CODE § 545.058).

4. The defendant was stopped at 5:27:51 p.m. in Potter County, Texas.

5. Trooper Phoutthavong contacted the defendant and determined that the vehicle was a one-way rental, the defendant was exceptionally nervous, had only stayed in the Phoenix area for a day or two and she claimed that the only luggage she had was a small back pack which was on the rear seat.

6. After checking the defendant's driver's license and criminal history Trooper Phoutthavong prepared a warning citation. Trooper Phoutthavong issued the warning citation to the defendant at 5:35:18 p.m. Trooper Phoutthavong determined that the defendant had flown in from Massachusetts to Arizona and rented the vehicle on the same day, two days before the stop. The defendant's explanation of her trip did not seem logical to the Trooper.

7. Based on Trooper Phoutthavong's prior experience and his training the Trooper reasonably believed [that] criminal activity was occurring.

8. Trooper Phoutthavong requested consent to search the vehicle at 5:36 p.m. which the defendant refused.

9. Trooper Phoutthavong immediately sought the assistance of a K-9 unit.

10. The K-9 unit arrived a[t] the scene at 5:41:10 p.m., approximately five minutes after being requested.

11. The K-9 alerted on [the] vehicle at 5:44 p.m. and a search was then conducted on the vehicle.

12. At 5:45:20 p.m. 227 pounds of Marihuana were located in the trunk of the vehicle and the defendant was arrested.

13. The length of the detention (about 17 minutes) was reasonable under the circumstance.

14. The Court finds that Trooper Enoi Phoutthavong was a reliable and credible witness. The Court further finds that he articulated specific facts that, under the circumstances that existed during the stop, would have caused a reasonable officer with similar training and experience to believe that criminal activity was occurring in his presence.

Based upon these findings of fact, the trial court then entered conclusions of law as follows:

> 1. Trooper Phoutthavong was authorized to stop and detain the defendant because he had observed her commit the offense of Driving on Improved Shoulder. (citations omitted).
>
> 2. Trooper Phoutthavong took only reasonable and necessary steps in conducting the traffic stop. (citations omitted)
>
> 3. His observations of the defendant and the vehicle combined with the defendant's explanation of her travels and the nature of the rental agreement provided sufficient objective facts upon which Trooper Phoutthavong based a reasonable belief that criminal activity was occurring. (citations omitted)
>
> 4. The defendant's sole objection contained in her Motion to Suppress is without merit. Given the totality of the circumstances the initial stop was justified and reasonable. Further, the detention was proper and lawful. (citations omitted)

Appellant filed a notice of appeal and now appeals the trial court's judgment in three issues. Appellant's first issue contends that the failure of the record to produce the videotape of the stop required this Court to abate the appeal back to the trial court because the videotape was necessary for proper resolution of the case. The videotape was in fact produced and is a part of this record; therefore, appellant's first issue is moot. Appellant's second and third issues present the questions of the validity of the initial stop (issue two) and the propriety of appellant's continued detention after the issuance of the warning ticket. We will address them in turn.

## Motion to Suppress

### Standard of Review

We review a trial court's ruling on a motion to suppress for abuse of discretion. *See Oles v. State*, 993 S.W.2d 103, 106 (Tex. Crim. App. 1999). The trial court is the

5

sole judge of the credibility of the witnesses and the weight to be given their testimony. *See State v. Ross*, 32 S.W.3d 853, 855-56 (Tex. Crim. App. 2000) (en banc*)*. Accordingly, we afford almost total deference to a trial court's determination of historical facts supported by the record which are based upon evaluation of credibility and demeanor of the witnesses. *See Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997) (en banc*)*. Thus, the findings of fact of the trial court, which find support in the record, and the rational inferences drawn from the supported facts are entitled to deference on appeal. *See Manzi v. State*, 88 S.W.3d 240, 243 (Tex. Crim. App. 2002). However, the legal conclusion drawn from those facts is reviewed *de novo*. *See Kothe v. State*, 152 S.W.3d 54, 62 (Tex. Crim. App. 2004) (holding questions involving legal principles and the application of law to established facts are reviewed *de novo*).

A law enforcement official may stop and detain a citizen suspected of commission of a criminal offense on less evidence than that required to support probable cause. *Terry v. Ohio*, 392 U.S. 1, 22, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968). To support an investigatory detention, 1) the officer's actions must be justified at the inception of the detention, and 2) the detention must be reasonably related in scope to the circumstances that justified the interference in the first place. *Id.* at 19-20. We make the determination regarding the initial stop based on a review of the totality of the circumstances to ascertain whether the trooper had reasonable suspicion to believe that appellant had committed an offense or in some other manner provided the trooper with articulable facts that would support a detention. *Davis v. State*, 947 S.W.2d 240, 244 (Tex. Crim. App. 1997) (en banc*)*.

Initial Stop

Regarding the initial stop of appellant, appellant asserts in her first issue that the officer did not have reasonable suspicion to stop her or did not reasonably use his community caretaking function to do so. As to the second portion of appellant's contention, the community caretaking function, this was never asserted to be the reason to stop appellant. *See Corbin v. State*, 85 S.W.3d 272, 276 (Tex. Crim. App. 2002) (noting that a police officer's job has been characterized to include a community caretaking function). The trial court's findings of fact do not mention this theory at all, and a review of the record demonstrates that the State never relied upon the community caretaking function to support the initial stop of appellant. Rather, the State avers that appellant committed a traffic offense that resulted in her stop.

Trooper Phouatthavong testified that he observed appellant's vehicle twice cross over onto the improved shoulder on the solid white line. This according to the trooper was the traffic offense of driving on the improved shoulder. TEX. TRANSP. CODE ANN. § 545.058 (West 2011). The statute at issue provides:

> (a) An operator may drive on an improved shoulder to the right of the main traveled portion of a roadway if that operation is necessary and may be done safely, but only:
>
> > (1) to stop, stand, or park;
> >
> > (2) to accelerate before entering the main travelled lane of traffic;
> >
> > (3) to decelerate before making a right turn;
> >
> > (4) to pass another vehicle that is slowing or stopped on the main traveled portion of the highway, disabled, or preparing to make a left turn;
> >
> > (5) to allow another vehicle traveling faster to pass;

7

(6) as permitted or required by an official traffic-control device; or

(7) to avoid a collision.

*Id.*[2]

Appellant's contention is that, since the State has the burden of proof on the issue of legality of the initial detention, the State must elicit testimony that proves none of the seven exceptions to the prohibition about driving on the improved shoulder applies. This misses the meaning of the statute. The seven listed exceptions are instances when driving on the improved shoulder is permissible when necessary, and can be done so safely. *See Lothrop v. State*, 372 S.W.3d 187, 191 (Tex. Crim. App. 2012). The record reflects that Trooper Phoutthavong testified that appellant was driving on the improved shoulder when prohibited. Appellant denied ever driving on the improved shoulder. This testimony demonstrates that there is nothing in the record to reflect the necessity of appellant to drive on the shoulder or that her driving on the improved shoulder fit any of the seven listed exceptions to the prohibition to driving on the improved shoulder. *See id.* This and other intermediate appellate courts have found that the traffic offense of driving on the improved shoulder supports an initial detention of a driver. *See id.* (finding probable cause for traffic stop for violation of section 545.058(a)); *State v. Lockhart*, No. 07-04-00304-CR, 2005 Tex. App. LEXIS 6159, at *9 (Tex. App.—Amarillo Aug. 2, 2005, no pet.) (not designated for publication) (finding that driving on improved shoulder supported probable cause to stop appellant); *Martinez v. State*, 29 S.W.3d 609, 612 (Tex. App.—Houston [14th Dist.] 2000, pet. ref'd) (suggesting violation of driving on shoulder statute as alternative justification for stop).

---

[2] Further reference to the Texas Transportation Code will be by reference to "§ ____."

Therefore, it is clear to this Court that the trooper had sufficient cause to initially detain appellant for the commission of a traffic offense. Appellant's second issue is overruled.

Continued Detention

By her third issue appellant contends that the trooper lacked reasonable suspicion to continue to detain her after the issuance of the warning ticket for driving on the improved shoulder. The trial court found that the trooper had reasonable suspicion to detain appellant further.

In addressing appellant's complaint, we need to begin with a review of the applicable law. Inasmuch as we have held, in connection with appellant's second issue, that the trooper had reasonable suspicion to initially stop appellant, the issue now before the Court is the second prong of the *Terry* analysis. *See Kothe*, 152 S.W.3d at 63. That is, we must now determine whether the search and seizure was reasonably related, in scope, to the circumstances that justified the stop in the first place. *See id*. In making this determination, we must remember that the scope of a *Terry* investigative stop can last no longer than necessary to effect the purpose to the stop. *See id.* As a component of the initial stop the trooper has authority to conduct a driver's license and warrant check. *See id.* There is no formulaic order that these actions must proceed in, rather they must not detain the citizen any longer than necessary to effectuate their purpose. *See id. at 66; see also United States v. Sharpe*, 470 U.S. 675, 685-86, 105 S. Ct. 1568, 84 L. Ed. 2d 605 (1985) (declining to "establish *per se* rule that a 20-minute detention is too long" under *Terry).* After completion of the purposes of the initial stop, the officer must have reasonable suspicion to believe that further criminal activity has occurred or is being committed to justify further detention of the suspect. *See Davis*,

9

947 S.W.2d at 245. In other words, once the original purpose for the stop is exhausted, police may not unnecessarily detain drivers solely in hopes of finding evidence of some other crime. *Kothe*, 152 S.W.3d at 64.

A review of the record before the Court indicates the following occurred. Appellant was stopped for a traffic offense. Upon initially contacting appellant, the trooper noticed that appellant was extremely nervous.[3] During a routine interview of appellant, the trooper learned that the car was a rental and that the rental agreement was a one-way rental from Arizona. Further, appellant learned that appellant was headed to Massachusetts. Additionally, the trooper learned that appellant only stayed in Arizona for two days. The trooper observed only a small backpack in the backseat of the car and confirmed from appellant that this was her only luggage. Upon being questioned by the trooper, appellant said she was going to meet her husband. Subsequently, the trooper requested a computer check on appellant's driver's license and criminal history. Both appellant's driver's license and criminal history were reported as clear. The trooper prepared a warning ticket for driving on the improved shoulder and gave it to appellant. The trooper then requested permission to search appellant's vehicle and appellant declined to grant permission. The trooper then requested the K-9 unit come and perform an open air search of the vehicle. Appellant was detained until this could be performed. From these facts, we must decide whether the trooper had reasonable suspicion that appellant had committed or was about to commit a criminal act.

---

[3] The trooper later explained that appellant, though polite and cooperative, was "just a little more" nervous than the average motorist.

In analyzing these facts we must remember that although we accept the trial court's findings of facts, the application of the facts to the law is reviewed *de novo*. *Kothe*, 152 S.W.3d at 62. The ultimate question before us is whether this trooper developed objective facts, other than the facts that warranted the initial stop, that would lead him to reasonably suspect that appellant has engaged or is engaging in other criminal activity. *See McQuarters v. State*, 58 S.W.3d 250, 255 (Tex. App.—Fort Worth 2001, pet. ref'd).

> The facts as found by the trial court, and supported in the record, are as follows:
>
> (1) Appellant flew to Arizona and stayed two days;
>
> (2) Appellant made a one-way rental of a vehicle in Arizona;
>
> (3) Appellant was driving to Massachusetts;
>
> (4) Appellant had only one small backpack as luggage;
>
> (5) Appellant's driver's license and criminal history were clear;
>
> (6) Appellant was issued a warning ticket for driving on the improved shoulder;
>
> (7) Appellant refused to consent to a search of her vehicle.

The trial court stated as a finding of fact that appellant's explanation about her trip did not seem logical to the trooper. Absent from such a finding is why this provides any reasonable suspicion. *See Thompson v. State*, 408 S.W.3d 614, 625 (Tex. App.—Austin 2013, no pet.) (disagreeing with officer's characterization of appellants account of trip as "confused" and observing that simply because officer calls story confusing does not make it so). Even if we accept as true that the answer did not seem logical to the trooper, there is nothing about this lack of logical explanation that arises to reasonable

suspicion; rather, it simply reinforced the trooper's hunch or gut feeling that something more was going on. *See Davis*, 947 S.W.2d at 245.

In *Davis*, after the officer had determined Davis was not intoxicated—the basis for the original stop—and completed the driver's license check and criminal history check, the officer continued to detain Davis because he did not look like someone travelling on a business trip. *Id.* However, the Texas Court of Criminal Appeals stated that conclusion was not based upon any articulable facts that, taken together with reasonable inferences from those facts, would provide reasonable suspicion that continued detention was warranted. *Id.*

In *McQuarters*, the appellant was stopped because the officer felt that appellant was either falling asleep at the wheel or was intoxicated after observing his slow speed and the fact that the car drifted out of its lane on a couple of occasions. *McQuarters*, 58 S.W.3d at 253. Yet, an interview with appellant quickly dispelled the notion that he was intoxicated. *Id.* While questioning McQuarters, the officer observed that McQuarters was nervous, would not make eye contact, his hands were shaking, and his breathing was shallow. *Id.* at 254. Also the officer learned that McQuarters was driving a rental car and that the car was rented in the name of a third person. *Id.* Eventually, after issuing the warning tickets, the officer asked if there was anything of an "illegal nature" in the car. *Id.* McQuarters answered no, and the officer asked for consent to search, which was refused. *Id.* At that point in time the officer just "felt like" he had reasonable suspicion that McQuarters had narcotics in the vehicle. *Id.* Therefore, the officer continued the detention until a K-9 unit could be brought to the site. *Id.* The K-9 unit alerted on the vehicle and nine to ten pounds of marijuana were found in the trunk. *Id.*

Based upon these facts, the Fort Worth Court of Appeals held that, when considering the totality of the circumstances, including the officer's personal experience, a reasonable suspicion that McQuarters was hiding narcotics in the car could not be rationally inferred from these facts. *Id.* at 257.

The State likens our case to *United States v. Pack*, 612 F.3d 341, 357 (5th Cir. 2010), and cites the case for the proposition that the trooper does not have to observe the equivalent of direct evidence to continue to detain a lawfully detained subject. However, in *Pack* the facts are distinguishable from those presented to us. Specifically, *Pack* involved a stop where there was a passenger in the vehicle stopped. *Id.* at 345. When questioning both the driver and passenger separately, the trooper got stories that were significantly divergent. *Id.* at 345, 360. The Court in *Pack* characterized the divergent stories as neither reconcilable nor minor. *Id.* at 360. Such additional information was not available to the trooper in the case before the Court; rather, we have the trooper's opinion that the story told by appellant did not seem logical to him.[4]

The State also cites the Court to *United States v. Brigham* for the proposition that the Court "must allow law enforcement officers to draw on their own experience and specialized training to make inferences from and deductions about the cumulative information available to them that 'might well elude an untrained person.'" *United States v. Brigham*, 382 F.3d 500, 507 (5th Cir. 2004) (citing *United States v. Arvizu*, 534 U.S. 266, 273, 122 S. Ct. 744, 151 L. Ed. 2d 740 (2002)). The portion of the case cited by

---

[4] When Phoutthavong asked appellant why she was driving back, appellant explained that she was going to meet her husband who was in the National Guard. On cross-examination, Phoutthavong admitted that appellant's account of her travels could be a perfectly plausible story.

the State is a correct statement of the law; however, it does not necessarily lead us to conclude that the facts of our case demonstrate reasonable suspicion.

In *Brigham* the facts were that a traffic stop was made, there was a rental car being driven by Brigham, there were passengers involved, Brigham and the passengers gave conflicting stories, a passenger provided a false identification card, after continued questioning of Brigham and all the passengers—there were a total of four occupants—the trooper got, yet again, different stories. All of these facts finally led the trooper to conclude that something was amiss, and he then requested permission to search, which was granted. *Id.* at 504. The question before the Fifth Circuit Court of Appeals, sitting en banc*,* was whether the scope of the valid stop was exceeded. *Id.* at 506. The court held that, under the facts of the case, the officer did not exceed the proper scope of the valid traffic stop because he was able to apply his experience and training to an analysis of these facts to justify the continued detention. *Id.* at 509.

The factual differences from our case are telling. First, in *Brigham* there were multiple stories told by the driver and the passengers, and the individual accounts apparently changed with each telling. *See id.* at 504-05. The rental agreement listed the renter as a 50-year-old female and the officer observed that no one in the car fit that description. *Id.* at 504. There was a false identification card presented to the officer. *Id.* All of these facts were articulated by the officer as reasons he continued to detain Brigham. *See id.* at 508. In our situation, we have only the fact that appellant's story did not seem logical to the officer and that she did not have any significant luggage in the vehicle. Granted, both she and the appellant in *Brigham* appeared nervous. Here, the trooper admitted that many people are nervous when stopped, but that appellant

14

appeared more so. *See McQuarters*, 58 S.W.3d at 257 (charactering a motorist's nervousness as a "weak indicator of hidden narcotics"); *see also St. George v. State*, 237 S.W.3d 720, 726 (Tex. Crim. App. 2007). A review of the testimony of the trooper involved in the case at bar leads to the conclusion that the trooper made a determination to try and get more information from appellant within the first 30 to 60 seconds of his contact with her. This, by his own testimony, was because there was an inappropriate amount of luggage for her stated trip.[5]

The essence of the State's position is that a nervous driver on I-40 driving a one-way rental with minimal luggage provides enough reasonable suspicion to warrant detention until a K-9 search can be performed. That such an observation and analysis turned out to be accurate does not alter one fact: it was nothing more than an inarticulable hunch. *See Illinois v. Wardlaw*, 528 U.S. 119, 123-24, 120 S. Ct. 673, 145 L. Ed. 2d 570 (2000) (reiterating that reasonable suspicion is "more than an 'inchoate and unparticularized suspicion or hunch' of criminal activity"). There was nothing before the trooper that would rise to the level of reasonable suspicion that would allow him to continue to detain appellant until the K-9 unit could arrive. *See Davis*, 947 S.W.2d at 245; *McQuarters*, 58 S.W.3d at 255; *Sieffert v. State*, 290 S.W.3d 478, 485–86 (Tex. App.—Amarillo 2009, no pet.). Accordingly, the trial court's conclusion to the contrary was an abuse of discretion. *Oles v. State*, 993 S.W.2d 106. Therefore, we sustain appellant's third issue and reverse the trial court's decision to deny the motion to suppress.

---

[5] Having too much luggage for the trip may also be suspicious. *See Love v. State*, 252 S.W.3d 684, 686 (Tex. App.—Texarkana 2008 pet. ref'd).

Conclusion

Having sustained appellant's third issue, we reverse the judgment the trial court and remand this case to the trial court for further proceedings consistent with this opinion.


Mackey K. Hancock
Justice


Publish.