# 1096-15

No. 13-14-00088-CR

ORIGINAL

In The Court of

Appeals For The

Thirteenth District Texas

RECEIVED IN
COURT OF CRIMINAL APPEALS

OCT 29 2015

Abel Acosta, Clerk

Troy Anthony Jenkins,

        Appellant.

V.

The State of Texas

        Appellee.

RECEIVED
OCT 22 2015
13th COURT OF APPEALS

On Appeal from the 207th Judicial District

Court; Cause No. CR-2012-504

Comal County, Texas

FILED IN
COURT OF CRIMINAL APPEALS

OCT 29 2015

Abel Acosta, Clerk

## Petition For Discretionary Review

Troy Anthony Jenkins

TDC No. 01921882

John B. Connally Unit

899 Fm 632

Kenedy Texas 78119

Thirteenth Court of Appeals

Corpus Christi, Texas

# Table of Contents

1.) Index of Authorities

2) Statement of regarding oral arguement

3.) Statement of the case

4.) Statement of procedural history

5.) Grounds for review

6.) Arguement

7) Prayer for relief

## Identifying Parties and Counsel

Appellant: Troy Anthony Jenkins

TDC No 01921882

John B. Connally

Kenedy Texas 78119

899 Fm 632

Appellate: Ms. Jennifer Tharp

Mr. Samuel B Ketz

Joosha D. Presley

Comal County District Attorney office

150 North Seguin, Suite 307

New Braunfels, Texas 78130

(Tel) 830.221.1300

(Fax) 830.608.2008

## Index of Authorities

United States Constitution

U.S. Const. Amend IV                                    (P. 5)


United States Supreme Courts Cases

Terry V. Ohio                                          (P.5)

342 U.S. 1, 88 S.Ct. 1868, 20 L.Ed. 2d 889 (1968)


Texas Cases

Amores V. State,                                      (P.6)

(816 S.W.2d 407 (Tex. Crim.App. 1991)


Wright V. State                                       (P.6)

(7 S. W. 3d 148 (Tex. Crim, App.)

## Statement regarding Oral Arguement

The Appellant due wish to have an Oral Arguement for the following reasons; Counsel and Appellant can point out several more errors that occurred within the case. Also Appellant wish to confront Counsel for the states evidence and cross examine it. This Arguement should be heard because Appellant has the max of thirty (30) years confinement, and would appricate if it was a fair fight for his life.

## Statement of the Case

Appellant was charged by indictment with the felony offenses of aggravated robbery in Count 1, aggravated robbery in count 2, and burglary of habitation in Count 3. (CR-6-7). Appellant filed a "Motion to Suppress Evidence Obtained by Illegal Search of the defendant during Illegal Vehicle Stop". (CR 11-14). After a hearing was held on the motion to suppress, the trial court denied the requested relief. (CR 25, 67).

Subject to the trial court's ruling, Appellant pled guilty to all three counts in the indictment. (CR 73-77) (RR III 5). Punishment was assessed at thirty years confinement in the Texas Department of Criminal Justice in connection with Count 1 and 2. (CR 81-87)(RR IV 135). Punishment was assessed at 15 years confinement in the Texas Department of Criminal Justice in connection with Count 3. (CR 88-90)(RR IV 135). The trial Court certified Appellant's rights to appeal the ruling on the motion to suppress. (CR 78). Appellant timely filed Notice of Appeal. (CR 68-69, 140-141). Brief for appellant was due May 28, 2014. Appellant filed Brief in a timely manner.

## Issues Presented

The trial judge and court of criminal Appeals denied relief to the motion to suppress evidence obtained by an illegal search of the Appellant during an illegal vehicle stop.

-3-

## Statement of procedural history

The Court of Appeals has denied relief on the case on July 23, 2015. Appellant filed for extension, and has no later than Oct 23, 2015 to have the Petition For Discretionary Review turn in for a timely manner.

<u>Grounds For Review</u>

Ground 1.) Officer Ramirez stated he did not have ~~respon~~ reasonable suspicion or probable cause in a "Motion to suppress Evidence" hearing, which pertain to the stop. (RR II 31).(RR II 30-31)

Ground 2.) Officer Ramirez could be heard discussing with other oath officers that "something about it made me click. Which invites intrusion of inarticulate hunch. And good faith alone were the test, the protections of the fourth Amendment would evaporate. Terry V. Ohio 392 U.S.1 (RR V States Exhibit at 4:10:12 a.m.).

Ground 3.) If Ramerez had been employed for "about a year and a half" at the August 15, 2013 hearing, he was employed as a peace officer for no more than eight (8) months at the time of Appellants stop/arrest/seizure. Which shows he had lack of ~~clexp~~ expierence in such circumstances.

Ground 4.) Ramirez conceded that the vehicle carrying Appellant could have been unrelated to the robbery. (RR II 29);

Ground 5.) There were multiple (at least 5) routes of escape from the location of the robbery (RR II 29);

Ground 6.) No information was provided regarding the robbery suspects' direction of travel (RR II 39);

Ground 7.) Ramerez did not observe any sort of violation of the Transportation code, which means no strange behavior was made. (RR II 43).

Ground 8.) Appellant fail to fit the description of sounding on looking Hispanic, as it indicate in the 911 call. (10-11-2012 01:58:55: Knell, Kristin "Actors Sounded Hispanic").

Ground 9.) Appellants fail to look or behave suspiciously by parking in a designated parking spot along with serveral other vehicles, which was in a "Private Parking lot". (RR V States Exhibit 2).

Ground 10.) It must be recognized that whenever a police officer accosts an individual and restrains his/her freedom to walk away, he has 'seized' that person.

Ground 11.) Ramirez conceded which agreed with Defendants that, the average Motorist would yield at his missle-like driving in order to fulfill his hunch. August 15 2013 "Motion to Suppress" hearing.

Ground 12.) The reasons for the stop given by the officer were unreasonsly speculative and appear to be nothing more than an attempt through hindsight to justify the stopping and detaining of [A]ppellant. Wright V. State 18 S.W.3d 245, 247 (Tex. App. - Austin 2000 pet ref'd)

Ground 13.) Detention of Appellant with guns drawn, being taken to the ground, and put in cuffs amounted to an arrest without propable cause. Amores V. State, 816 SW.2d 407 (Tex. Crim. App. 1991).

## Arguement

Appellant wishes to know why has the relief been denied, when infact the arresting officers said in a "propable cause" hearing that he did not have propable cause. Also how is an indivual suppose to tell a person (police officer) no when holding a fire arm at him or her. The arresting officer did not ash for anytype of paper to investagate more thoroughly into the crime to be one hundred percent that Appellant was infact a suspect in a robbery.

## Prayer

Appellant respectfully asks this court to sustain his point of error and to reverse the judgement that was handed down by the trial court.

respectfully submitted

Troy Anthony Jenkins

TDC No. 01921882

John B. Connally Unit

Kenedy, Texas 78119

By: Troy Jenkins



NUMBER 13-14-00088-CR

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

TROY ANTHONY JENKINS,                                        **Appellant,**

**v.**

THE STATE OF TEXAS,                                          **Appellee.**

## On appeal from the 207th District Court
## of Comal County, Texas.

# MEMORANDUM OPINION

**Before Chief Justice Valdez and Justices Benavides and Perkes**
**Memorandum Opinion by Chief Justice Valdez**

Appellant Troy Anthony Jenkins pleaded guilty to two counts of aggravated robbery

and one count of burglary of a habitation. *See* TEX. PENAL. CODE ANN. §§ 29.03, 30.02

(West, Westlaw through Chapter 46 2015 R.S.). The trial court sentenced appellant to

forty-five years in the TDCJ-Institutional Division and assessed a fine of $10,000 on each

count. By one issue, appellant challenges the trial court's denial of his motion to suppress. We affirm.

## I. BACKGROUND[1]

On August 15, 2013, the trial court held a hearing on appellant's motion to suppress. At the hearing, Officer Samuel Ramirez testified that on October 11, 2012, he was on duty in the area of FM 306 and IH-35 north in New Braunfels, Texas. Officer Ramirez stated that the traffic was very light while traveling on north FM 306. At approximately 1:55 a.m., Officer Ramirez received a call from dispatch that an armed robbery had just occurred near the area where he was driving. After the call, Officer Ramirez drove toward the robbery location at the 2200 block of East Common. The dispatcher provided no description of the means of transportation the suspects used and did not direct Officer Ramirez to where the suspects were heading.[2] Officer Ramirez explained that he was aware that East Common—the street where the robbery occurred—connected to streets other than FM 306. While driving to the robbery location, Officer Ramirez observed two cars driving past his vehicle.

Officer Ramirez turned around and started following one of the vehicles that was traveling toward IH-35 because "it caught his attention." According to Officer Ramirez, he accelerated to a high speed to approach the vehicle but never activated the emergency lights of his vehicle. Although Officer Ramirez noticed no violations of the Texas Transportation Code while he was behind the vehicle, he noticed that as he followed the

---

[1] This case is before the Court on transfer from the Third Court of Appeals in Austin pursuant to a docket equalization order issued by the Supreme Court of Texas. *See* TEX. GOV'T CODE ANN. § 73.001 (West, Westlaw Chapter 46 2015 R.S.).

[2] According to Officer Ramirez, the dispatcher informed him that the suspects involved in the robbery were two males who "sounded Hispanic" and carried handguns. The dispatcher also stated that the victim claimed she heard a "third different voice."

2

vehicle, the driver did not yield the right-of-way to his vehicle and kept driving forward. According to Officer Ramirez, an average motorist in the same circumstances generally yields the right-of-way to a police officer, but not to the point where the driver unusually pulls over to a complete stop. The vehicle then turned left on IH-35 frontage and reduced its speed to turn right into a shopping center parking lot. Officer Ramirez followed the vehicle into the parking lot, and at approximately 1:59 a.m., the driver of the vehicle parked the vehicle. The shopping center was closed at this time and was approximately within two miles of the robbery location.

Officer Ramirez testified that after he saw the vehicle pull over, he pulled over as well and activated his spotlight because it was nighttime. Officer Ramirez stated he did not activate the emergency lights. A female driver opened the door of the stopped vehicle and stated that the window did not roll down. Officer Ramirez advised her to stay in the vehicle. As Officer Ramirez saw the female driver, he told dispatch "we may have the wrong people." Officer Ramirez asked the female driver how many passengers were in the vehicle, and she answered that two other passengers occupied the vehicle. After Officer Ramirez observed the passengers—a male in the front passenger seat and another male sitting in the back seat—he instructed the female driver to put the keys of the vehicle on the hood of the car and to step out of the vehicle. Officer Ramirez then instructed the two males to put their hands up where they could be seen while he waited for a backup officer to arrive. Officer Ramirez testified that at this point in time, he did not draw his gun because he was not certain the passengers were involved in the robbery.

When backup Officer Michael Burton arrived at the scene, the female driver was outside of the vehicle, and the two males were still inside of the vehicle. Officer Burton

3

immediately drew his weapon and ordered the two males to keep their hands up. Officer Ramirez ordered appellant, who was sitting in the backseat, to step out of the vehicle. Officer Ramirez patted down appellant and found a pistol and a loaded magazine in his pockets. Officer David Cantu, a police officer who also arrived at the location, was advised that one of the passengers carried a firearm. Officer Cantu drew his department issued firearm and instructed Dylan Caad—the second male passenger in the vehicle—to step out of the vehicle and to lie down on the ground. The police officers observed ski masks and dark clothing in plain view. After they searched the vehicle, they found other items that matched the items stolen during the robbery. The three passengers of the vehicle were placed in handcuffs and taken into custody.

Appellant moved to suppress the evidence obtained during the search, and the trial court denied the motion. This appeal followed.[3]

## II. MOTION TO SUPPRESS

### A. Standard of Review

In reviewing a motion to suppress evidence, Texas courts apply a "bifurcated" standard of review in which appellate courts give almost total deference to a trial court's determination of the historical facts and review de novo the court's application of the law of search and seizure to those facts. *State v. Ross*, 32 S.W.3d 853, 856 (Tex. Crim. App. 2000). Whether the facts known to the officer amount to reasonable suspicion is a mixed

---

[3] A passenger that has been illegally detained can challenge the validity of the initial stop of a vehicle because his personal liberty and freedom were intruded on by that action. *Lewis v. State*, 664 S.W.2d 345, 348 (Tex. Crim. App. 1984); *Morrison v. State*, 71 S.W.3d 821, 828 n.5 (Tex. App.—Corpus Christi 2002, no pet.) ("We pause briefly to note that standing is not an issue because a passenger in a vehicle can challenge the search of a vehicle in which he is riding if the search resulted from an infringement, such as an illegal detention, of the passenger's Fourth Amendments rights.") (citing *Carroll v. State*, 56 S.W.3d 644, 650 (Tex. App.—Waco 2002, pet. ref'd)).

4

question of law and fact also subject to review de novo. *Hamal v. State*, 390 S.W.3d. 302, 306 (Tex. Crim. App. 2012). When mixed questions of law and fact do not depend on the evaluation of credibility and demeanor, we review the trial judge's ruling de novo. *State v. Kerwick*, 393 S.W.3d. 270, 273 (Tex. Crim. App. 2013).

In this case, since the historical facts are supported by the record, this court will apply the "bifurcated" standard of review, which gives deference to the trial court's determination of the facts, but will review de novo the application of the law to determine whether the police officer had reasonable suspicion to investigate appellant and search appellant's vehicle. *See Ross*, 32 S.W.3d at 856.

## B.    Applicable Law

The Fourth Amendment provides that the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated. U.S. CONST. amend. IV. For purposes of the Fourth Amendment, investigative detentions and arrests are considered seizures. *Johnson v. State*, 912 S.W.2d. 227, 235 (Tex. Crim. App. 1995). In order to determine whether an investigative detention is constitutional, courts use the *Terry* two-part analysis: we need to determine (1) whether or not the officer's search and seizure is justified at its inception, and (2) whether or not the officer's search and seizure was reasonably related in scope to the circumstances that initiated the interference in the first place. *Terry v. Ohio*, 392 U.S. 1, 18–19 (1968). The police officer's temporary seizure is permitted if reasonable suspicion of criminal activity exists. *Wade v. State*, 422 S.W.3d 661, 668 (Tex. Crim. App. 2013).

Reasonable suspicion exists if the officer demonstrates specific, articulable facts that, coupled with coherent inferences from those facts, lead to the conclusion that a

particular person actually is, has been, or soon will be engaged in criminal activity. *Johnson v. State*, 444 S.W.3d 209, 213 (Tex. App.—Houston [14th Dist.] 2014, pet. ref'd). The analysis of the facts used is the "totality of the circumstances" analysis, which prevents the divide-and-conquer analysis. *United States v. Arvizu*, 534 U.S. 266, 274 (2002); *see also United States v. Sokolow*, 490 U.S. 1, 9-10 (1989) (holding that independent factors which are considered "innocent" collectively amounted to reasonable suspicion). When determining whether the police officer's search is justified, the court uses an objective standard to determine whether all the facts provided would warrant a reasonable person to believe that the search is appropriate to determine whether the suspect was engaged in a criminal act. *Gipson v. State*, 268 S.W.3d 185, 189 (Tex. App—Corpus Christi 2008, no pet.).

In determining whether the search was related to the circumstances that initiated the interference, courts look at whether the investigative detention lasted longer than necessary to investigate the circumstances that caused the search. *Thomas v. State*, 420 S.W.3d 195, 201 (Tex. App. 2013). However, the justification for the search is restricted in scope to an intrusion that is designed to discover firearms or other hidden instruments the suspect may use to injure the police officer. *Terry*, 382 U.S. at 29.

C.     Analysis

In order to determine whether the investigative detention was constitutional in this case, we must apply the *Terry* two-part test. Under the first prong of the test, we must determine whether Officer Ramirez's search was justified at its inception because he had a reasonable suspicion that the individuals engaged or had engaged in criminal activity. *Wade*, 422 S.W.3d at 668.

6

Giving almost total deference to a trial court's determination of the historical facts, the evidence presented showed the following factors: (1) Officer Ramirez saw two vehicles "pass by" right after the dispatcher advised about the robbery; (2) the traffic was very light, and it was highly probable that one of the vehicles he saw was involved in the robbery; (3) he observed more than two passengers in the vehicle; (4) the vehicle was first observed within the area of the robbery location; and (5) the vehicle pulled over into a shopping center parking lot that was closed at 2:00 a.m.

Appellant argues that Officer Ramirez had no reason to start the investigation because the driver of the vehicle committed no violations of the Texas Transportation Code. This argument is irrelevant because the driver of the vehicle pulled over without any police action. The trial court may have found that a reasonable person, even though intimidated by the presence of the police officer behind him, is not likely to stop unless the police officer turns on the emergency lights on his vehicle. Appellant also argues that Officer Ramirez did not have a reasonable suspicion because he conceded uncertainty regarding the passengers' relation to the robbery when he said to the dispatcher "we might have the wrong people" and also because Officer Ramirez did not immediately draw his gun when he approached the vehicle.[4] In *Gipson*, the court used an objective standard to determine whether the facts would warrant a reasonable person to believe that the search is appropriate to determine if the suspect was engaged in criminal activity. *Gipson*, 268 S.W.3d at 189. Therefore, we should look at the facts objectively to determine whether a reasonable person in similar circumstances would have found that

---

[4] At the hearing, when asked, "Why didn't you draw your gun," Officer Ramirez replied, "At that time, I was still unsure if these were the possible suspects."

7

these facts established a reasonable suspicion that a crime was afoot. *Johnson*, 444 S.W.3d at 214.

Appellant contends that Officer Ramirez's investigation is a product of his inarticulate hunch because the dispatcher did not provide information regarding the means of transportation the suspects used or the direction in which the suspects were headed. However, courts have considered a vehicle's proximity to the reported crime as a relevant factor that raises the level of suspicion. *See Sanders v. State*, 992 S.W.2d 747, 752 (Tex. App.—Amarillo 1999, pet. ref'd.).

In the present case, regardless of the means of transportation, a reasonable person would likely infer that a suspect would be in close proximity to the location of the scene because the dispatcher call occurred at 1:55 a.m. and advised Officer Ramirez that the suspects left the robbery only two minutes prior to the victim's call. Approximately, three minutes later, the vehicle pulled over into the closed parking lot. A reasonable person could have deduced that the suspects would be at a nearby location given that only a few minutes elapsed after the call. At the hearing, Officer Ramirez testified that the traffic was very light and that he only observed two cars "pass by." In addition, based on evidence that there were more than two passengers in the vehicle, which is consistent with the information the dispatcher provided regarding a "third voice" and possibly a third person involved, the trial court could have inferred that if more than two people were involved in the robbery, they would be traveling in the vehicle together and would try to escape the scene.

Appellant points out that Officer Ramirez followed only one of the two vehicles and failed to get information on the second vehicle. Appellant also argues that Officer Ramirez

attempted to dictate the fashion in which a motorist should yield the right-of-way to a speeding officer by finding that a motorist who pulls into a parking lot to yield the right-of-way is inappropriate and suspicious. In essence, appellant requests that we look at each fact independent of the others because neither by itself is suspicious. However, we do not consider these facts independently; instead, we consider the totality of the circumstances. *Arvizu*, 534 U.S. at 274. Thus, although a vehicle parked in close proximity to a business that is closed for the day, is not, in itself, suspicious; it is a factor we may consider in deciding whether reasonable suspicion exists. *Klare v. State*, 16 S.W.3d. 68, 74 (Tex. App. 2002). The time of the day is another factor taken into account when determining whether an officer's suspicion was reasonable. *Id.* at 73–4. The court in *Tanner* determined that the police officer was justified to investigate two individuals who came out from behind a darkened place that had been closed at 3:00 a.m. reasoning that the totality of the circumstances—time of night, poor lighting, and location—amounted to reasonable suspicion. *Tanner v. State*, 228 S.W.3d 852, 858–59 (Tex. App.—Austin 2007, no pet.).

In the present case, even though pulling over into a parking lot may not be suspicious per se, a vehicle pulling over to park in a closed shopping center located within two miles of a robbery location, approximately three minutes after the dispatch call, and carrying the number of passengers consistent with the description provided, raises some suspicion. Moreover, the trial court may have reasonably inferred that the driver was attempting to elude Officer Ramirez by parking the vehicle in a closed shopping center at 2:00 a.m. Furthermore, the trial court may have also inferred that the reason that the

driver wanted to elude Officer Ramirez showed a consciousness of guilt and that the occupants of the vehicle were involved in the crime.

In the second prong of the *Terry* two-part test, the court will determine whether the officer's search and seizure was reasonably related to the circumstances that initiated the interference in the first place. The purpose of the investigation was to determine if the occupants of the vehicle were involved in the robbery. Since the dispatch log advised the police officers that the suspects carried two firearms, the police officers knew it was possible that the passengers of the vehicle carried firearms. For purposes of their own protection, police officers have the right to pat down the outer clothing of individuals, who they believe can be armed. *Terry* 382 U.S. at 8. In order to dispel his suspicion and protect himself from a possible injury, the officer who performed the pat down was entitled to ensure the passengers were not armed. Therefore, the trial court may have concluded that the officer was justified when he conducted a pat-down search of appellant. After finding the firearm in appellant's pocket, and observing clothing in the back seat that matched the description of the clothing used by the actors involved in the robbery, the police officers were justified to conduct further investigation to dispel or confirm their suspicions. *Garcia v. State*, 327 S.W.3d 243, 248 (Tex. App.—San Antonio 2010, no pet.).

Since a reasonable person would coherently suspect that the individuals in the vehicle were involved in criminal activity and the purpose for the investigation was reasonably related to the robbery, the officers in this case were justified in conducting the search, and the interference is therefore constitutional. We conclude that the trial court

did not err in denying appellant's motion to suppress evidence.[5] We overrule appellant's sole issue.

## III.  Conclusion

We affirm the trial court's judgment.

**/s/ Rogelio Valdez**
ROGELIO VALDEZ
Chief Justice

Do not publish.
Tex. R. App. P. 47.2(b).

Delivered and filed the
23rd day of July, 2015.

---

[5] Appellant also argues that Officer Ramirez's investigation was an unreasonable application of the community caretaking function. This issue however is not necessary to the final disposition of the appeal, and therefore we will not address it.  *See* Tex. R. App. P. 47.1 (providing that the court of appeals must hand down a written opinion that is as brief as practicable but that addresses every issue raised and necessary to final disposition of the appeal).