

# IN THE COURT OF CRIMINAL APPEALS OF TEXAS

## NO. PD-1489-11

### DONALD ADAMS LOTHROP, Appellant

### v.

### THE STATE OF TEXAS

### ON APPELLANT'S PETITION FOR DISCRETIONARY REVIEW FROM THE SECOND COURT OF APPEALS, WISE COUNTY

*Womack, J., delivered the opinion of the Court, in which Meyers, Price, Johnson, Hervey, Cochran, and Alcala, JJ., joined. Johnson, J., filed a concurring opinion. Keller, P.J., concurred in the judgment. Keasler, J., dissented.*

This case requires us to construe the statute that regulates driving on the shoulder of a road.

The appellant was driving west on Highway 114 in Boyd. At a railroad crossing, the car

in front of him slowed down, and the appellant used an improved shoulder to pass the slowing car as they crossed the tracks. Boyd Police Officer Estel was driving east on Highway 114. Estel observed the appellant's driving and stopped him for illegally driving on an improved shoulder. For reasons not contained in the record, the appellant was arrested for driving while intoxicated.

Prior to his DWI trial, the appellant moved to suppress all evidence obtained as a result of the traffic stop on the basis that Estel's traffic stop was improper because Estel did not have reasonable suspicion that the appellant had committed a criminal offense. At the suppression hearing, Estel was the only witness. He testified that he saw the car that was driving in front of the appellant slow down at the railroad tracks, and he saw the appellant pass the slowing car on the shoulder. Estel said that he initiated the traffic stop based solely on that behavior. He did not testify that the appellant's driving was unsafe, or that the appellant violated any other laws.

The appellant argued that his driving was legal under Transportation Code section 545.058(a):

> (a) An operator may drive on an improved shoulder to the right of the main traveled portion of a roadway if that operation is necessary and may be done safely, but only:
> > (1) to stop, stand, or park;
> > (2) to accelerate before entering the main traveled lane of traffic;
> > (3) to decelerate before making a right turn;
> > (4) to pass another vehicle that is slowing or stopped on the main traveled portion of the highway, disabled, or preparing to make a left turn;
> > (5) to allow another vehicle traveling faster to pass;
> > (6) as permitted or required by an official traffic-control device; or
> > (7) to avoid a collision.

The appellant argued that he was "pass[ing] another vehicle that [was] slowing … on the main traveled portion of the highway .…" The trial court denied the motion to suppress and the appellant pled guilty to DWI.

The Second Court of Appeals affirmed the conviction.[1] It held that driving on an improved shoulder, regardless of circumstance, is prima facie evidence of an offense, and that Section 545.058(a) merely establishes defenses that a defendant may raise at trial.[2] The Court of Appeals analogized the "defenses" it read in Section 545.058(a) to the defense of self-defense, and determined that the same burdens of proof applied: the State must produce evidence only of the basic offense, and it is the defendant's burden to produce evidence of each element of the defense. In this case, the Court of Appeals determined that the "defenses" in Section 545.058(a) consist of three elements: the defendant must show "that driving on the shoulder was done (1) safely, (2) out of necessity, and (3) to effectuate one of the seven defenses enumerated in the statute."[3] After then determining that the appellant had not produced evidence that his passing on the shoulder was done safely and of necessity,[4] the Court of Appeals determined that he had not carried his burden of production and that Estel had reasonable suspicion for the traffic stop.

We disagree with the Court of Appeals's statutory analysis. First, we do not read the statute such that "necessary" is a free-standing requirement. When discussing whether a particular action is "necessary," the relevant inquiry is always: Necessary to what end? By treating necessity as a free-standing requirement, without context, the Court of Appeals ignored that inquiry. If the question were, "When is driving on an improved shoulder *absolutely* necessary?" we would agree with the Court of Appeals that it is hard to imagine a scenario in

---

[1] *Lothrop v. State*, No. 02-10-00317-CR, 2011 WL 3835726, 2011 Tex. App. LEXIS 7139 (Tex. App.–Fort Worth December 7, 2011) (mem op., not designated for publication).

[2] *Id.*, at *3.

[3] *Ibid.*

[4] *Ibid.* ("It would be difficult to imagine a scenario when such an action would be either necessary or safe, and none was presented by appellant.")

which it is.

But the legislature gave us a statute that lists several situations in which driving on the shoulder may be permitted, most of which would never be *absolutely* necessary. For instance, subsection (a)(4) allows a driver to use an improved shoulder to pass a vehicle preparing to make a left turn, but such an action would never be absolutely necessary – the driver could simply come to a stop behind the left-turning vehicle and wait for it to turn. However, since the statute plainly envisions drivers legally using improved shoulders in order to pass left-turning vehicles, interpreting "necessary" to mean *absolutely necessary* would thwart the legislative intent.

In the general context of driving, "necessary" may refer to necessary *to avoid a collision*.[5] But that cannot be how the legislature meant "necessary" in this statute, because "to avoid a collision" is one of seven enumerated reason to drive on an improved shoulder.[6] If the legislature had intended that improved shoulders be used only to avoid collisions, it would not have listed the other six allowable reasons.[7]

The only way to give meaning to every word of Section 545.058(a) while using common meanings and avoiding redundancies is to read "necessary" in the context of the seven permissible reasons. Thus Section 545.058(a)(5) would read: "An operator may drive on an

---

[5] *See Prudholm v. State*, 333 S.W.3d 590, 594 (Tex. Cr. App. 2011) ("[W]e may presume that each word in the statute has a purpose, and that words not defined in the statute are used in their ordinary and common sense.").

[6] *See Dowthitt v. State*, 931 S.W.2d 244, 258 (Tex. Cr. App. 1996) (We presume that "[e]very word in a statute has been used for a purpose and each word, phrase, clause, and sentence should be given effect if reasonably possible.").

[7] *See id.* Indeed, if "necessary" meant only "necessary to avoid a collision," the legislature would not have listed *any* of the seven reasons, as "necessary" appears in the first clause of the statute. If we insert this definition of "necessary" into the statute, subsection (a)(7) becomes wholly redundant: "An operator may drive on an improved shoulder to the right of the main traveled portion of a roadway if that operation is necessary to avoid a collision and may be done safely, but only to avoid a collision."

improved shoulder to the right of the main traveled portion of a roadway if that operation is necessary and may be done safely … to allow another vehicle traveling faster to pass."[8] Allowing another vehicle driving faster to pass is not necessary, but if a driver wanted to allow a vehicle driving faster to pass and it was necessary to drive on an improved shoulder in order to do so, Section 548.058(a)(5) allows the driver to do that so long as it may be done safely.

This does not set up a shifting-burden, self-defense-style framework, as the Court of Appeals believed. Rather, it shows that the offense of illegally driving on an improved shoulder can be proved in one of two ways: either driving on the improved shoulder was not a necessary part of achieving one of the seven approved purposes, or driving on the improved shoulder could not have been done safely. Merely driving on an improved shoulder is not prima facie evidence of an offense. Thus if an officer sees a driver driving on an improved shoulder, and it appears that driving on the improved shoulder was necessary to achieving one of the seven approved purposes, and it is done safely, that officer does not have reasonable suspicion that an offense occurred.[9] While there may be circumstances in which arguably legal behavior might produce reasonable suspicion of an offense, here the legislature *explicitly* made certain behavior legal. It would violate legislative intent to allow that behavior to serve as the basis of a traffic stop or arrest.

Applying this interpretation to the facts of this case, we hold that Estel did not have reasonable suspicion that the appellant was illegally driving on an improved shoulder. Estel

---

[8] We omit "but only" because it does not appear to have a functional role in any given application of the statute. It conveys only that the statute's list of reasons to drive on an improved shoulder is exclusive.

[9] *See* Castro v. State, 227 S.W.3d 737, 741 (Tex. Cr. App. 2007) ("Reasonable suspicion exists if the officer has specific, articulable facts that, when combined with rational inferences from those facts, would lead him to reasonably conclude that a particular person actually is, has been, or soon will be engaged in criminal activity.").

testified that the car in front of the appellant slowed down noticeably, and that the appellant then used the improved shoulder to pass the slowed car, as authorized by Section 545.058(a)(4). Estel did not testify that using the improved shoulder car was unnecessary to pass the slowing vehicle (*i.e.*, the appellant could have safely passed in the lane used by oncoming traffic), and the fact that Estel himself was driving toward the appellant strongly implies that the lane used by oncoming traffic was unavailable for passing. Estel did not testify that using the shoulder to pass was unsafe. Thus there was no evidence that Estel saw the appellant driving in a manner inconsistent with Section 545.0548(a)(4).

The Court of Appeals erred in affirming the trial court's denial of the appellant's motion to suppress. We reverse the Court of Appeals' judgment and remand this case to the trial court for proceedings consistent with this opinion.

Delivered May 9, 2012.
Publish.