**Opinion issued July 27, 2017**



In The

# Court of Appeals

For The

# First District of Texas

———————————

## NO. 01-16-00713-CR

———————————

## JONATHAN DAVID MORALES, Appellant

## V.

## THE STATE OF TEXAS, Appellee

---

**On Appeal from the County Criminal Court at Law No. 10**
**Harris County, Texas**
**Trial Court Case No. 2075290**

---

## MEMORANDUM OPINION

After the trial court denied his motion to suppress, appellant, Jonathan David Morales, pleaded guilty to driving while intoxicated (DWI). The trial court assessed punishment at 180 days' confinement, probated for one year, and assessed a $300 fine. In a single issue on appeal, appellant contends the trial court erred in denying his motion to suppress. We affirm.

## BACKGROUND

On February 19, 2016, Deputy Armand was patrolling the South Sam Houston Parkway around 2:30 a.m. As Deputy Armand was patrolling, he saw appellant driving on the improved right-hand shoulder as he was entering the freeway. This entrance ramp was close to a bar that had just recently closed. Another car was in the right lane of the freeway and was traveling the same speed that appellant was traveling up the entrance ramp. The other vehicle moved to the left lane, and once the other vehicle passed appellant, who continued to drive on the shoulder, the other vehicle returned to the right lane in front of appellant. Appellant then left the shoulder and finally moved his car to the center of the right lane.

Deputy Armand did not immediately stop appellant because he wanted to see if there was a "pattern to his driving." As appellant drove, he weaved within his own lane and at times his right wheels were on the line that separated the lane of traffic from the shoulder, and at other times his left wheels crossed over the line separating the lanes of traffic.

Deputy Armand initiated a traffic stop and gave two reasons for doing so: (1) driving on an improved shoulder and (2) failure to drive within a single lane. Deputy Armand performed multiple sobriety tests, and after further investigation, arrested appellant for driving while intoxicated. There was no warrant to arrest appellant, nor

2

did Deputy Armand receive notifications of intoxicated drivers on the road that night.

Appellant filed a motion to suppress any and all evidence seized or obtained as a result of the appellant's detention. At the suppression hearing, a dash-cam video from the traffic stop was introduced. Deputy Armand testified that he believed that the other car moved to the left lane and passed up appellant because the driver saw appellant's vehicle driving on the shoulder. He also testified that, based on the totality of the circumstances, it appeared to him appellant was impaired to a point where it was unsafe for him to drive.

The trial court found Deputy Armand's testimony to be credible. The trial court denied the motion to suppress and found that there was a reasonable suspicion to conduct a traffic stop. The court issued an additional finding of fact and conclusion of law that the stop was based on the officer's reasonable suspicion of observing traffic violations.

**MOTION TO SUPPRESS**

In his sole issue on appeal, appellant contends that the trial court erred by refusing to suppress the evidence seized or obtained during his traffic stop. Specifically, appellant contends that there was no reasonable suspicion he was engaged in criminal activities as required to lawfully initiate a traffic stop under the Fourth Amendment to the United States Constitution, Article 1, Section 9 of the

3

Texas Constitution, and Chapter 38 of the Texas Code of Criminal Procedure. Essentially, appellant argues that the evidence was seized as a result of an illegal detention.

*Standard of Review*

A trial court's decision to grant or deny a motion to suppress is reviewed under an abuse of discretion standard. *Oles v. State,* 993 S.W.2d 103, 106 (Tex. Crim. App. 1999). At a suppression hearing, the trial court is the exclusive trier of fact and judge of the credibility of the witnesses. *Guzman v. State,* 955 S.W.2d 85, 89 (Tex. Crim. App. 1997). We are also to afford such deference to a trial court's ruling on "application of law to fact questions," also known as "mixed questions of law and fact," if the resolution of those questions turns on an evaluation of credibility and demeanor. *State v. Ross,* 32 S.W.3d 853, 856 (Tex. Crim. App. 2000). We may review *de novo* those questions not turning on credibility and demeanor. *Id.* If the trial judge makes express findings of fact, we view the evidence in the light most favorable to his ruling and determine whether the evidence supports these factual findings. *Valtierra v. State*, 310 S.W.3d 442, 447 (Tex. Crim. App. 2010). When a trial court makes no explicit findings of historical fact, the appellate court should view the evidence in the light most favorable to the trial court's ruling and assume the trial court made implicit findings of fact. *See Carmouche v. State,* 10 S.W.3d 323, 328 (Tex. Crim. App. 2000).

4

## REASONABLE SUSPICION TO INITATE TRAFFIC STOP

The United States and Texas Constitutions protect against unreasonable searches and seizures. U.S. CONST. amend. IV.; TEX. CONST. art I, § 9. No evidence obtained in violation of the Constitution or the State of Texas can be admitted as evidence against the accused at trial. TEX. CRIM. PROC. CODE ANN. § 38.23 (West 2017). Generally, a law enforcement officer must have a warrant based on probable cause to search or seize an individual. *Wright v. State*, 7 S.W.3d 148, 150 (Tex. Crim. App. 1999) (en banc). A policeman without a warrant may only detain a person briefly if he has a reasonable suspicion that the person has or is breaking the law. *Berkemer v. McCarty*, 468 U.S. 420, 439, 104 S. Ct. 3138, 3150 (1984).

To suppress evidence based on a violation of the Fourth Amendment, the defendant bears the initial burden of proof to rebut the presumption of proper police conduct by establishing the search or seizure occurred without a warrant. *Abney v. State*, 394 S.W.3d 542, 547 (Tex. Crim. App. 2013). The burden then shifts to the State to prove that there was reasonable suspicion the person was violating the law. *Id.* If the State has not shown sufficient evidence of a reasonable suspicion, then the stop violates the Fourth Amendment. *Brodnex v. State*, 485 S.W.3d 432, 437 (Tex. Crim. App. 2016).

There must be a reasonable suspicion for an officer to conduct an investigative detention. *Id.* In order for an officer to have a reasonable suspicion, there must be "specific and articulable facts" that justify the traffic stop from the inception. *State v. Duran*, 396 S.W.3d 563, 568–69 (Tex. Crim. App. 2013) (quoting *Terry v. Ohio*, 392 U.S. 1, 20–21, 88 S. Ct. 1868, 1880 (1968)). These specific facts must reasonably warrant the intrusion on the freedom of the citizen detained for further investigation. *Martinez v. State*, 29 S.W.3d 609, 611 (Tex. App.—Houston [1st Dist.] 2000, pet. ref'd).

The trial court found that Deputy Armand initiated a traffic stop based on two violations: (1) driving on the improved shoulder, and (2) failure to maintain a lane. The issue becomes whether or not the State met its burden by presenting sufficient evidence that Deputy Armand, at the time he initiated the traffic stop, had reasonable suspicion that appellant was committing either of these violations.

*Driving on an Improved Shoulder*

Appellant concedes that he drove onto the improved shoulder as he was entering the highway. However, appellant contends that there was no reasonable suspicion to initiate a traffic stop from this action. Merely driving on the improved shoulder of the road is not prima facie evidence of an offense. *Lothrop v. State*, 372 S.W.3d 187, 191 (Tex. Crim. App. 2012). The Texas Transportation Code provides that:

6

An operator may drive on an improved shoulder to the right of the main traveled portion of a roadway if that operation is necessary and may be done safely, but only if:

> (1) to stop, stand, or park;
>
> (2) to accelerate before entering the main traveled lane of traffic;
>
> (3) to decelerate before making a right turn;
>
> (4) to pass another vehicle that is slowing or stopped on the main traveled portion of the highway, disabled, or preparing to make a left turn;
>
> (5) to allow another vehicle traveling faster to pass;
>
> (6) as permitted or required by an official traffic control device; or
>
> (7) to avoid a collision.

TEX. TRANSP. CODE ANN. § 545.058(a) (West 2011).

The word "necessary" in the statue is not a free-standing requirement. *Lothrop*, 372 S.W.3d at 190. Rather, "necessary" must be read in the context of the seven enumerated reasons where driving on the shoulder is permissible. *Id*. If an officer sees a driver driving on an improved shoulder, and it appears that driving on the improved shoulder was necessary to achieving one of the seven approved purposes, and it is done safely, that officer does not have reasonable suspicion that an offense occurred. *Id.* at 191. The legislature explicitly made this behavior legal, and it would violate legislative intent to allow that behavior to serve as the basis of a traffic stop or arrest. *Id.* The violation of illegally driving on an improved shoulder

7

can be proved in one of two ways: either driving on the improved shoulder was not a necessary part of the seven approved purposes, or driving on the improved shoulder could not have been done safely. *Id*.

Appellant contends that his driving was legal under Section 545.058 and cannot be the basis for a stop based on reasonable suspicion. He cites three of the permissible reasons in the statute for driving on the improved shoulder. The appellant argues that it was necessary for him to drive on the improved shoulder: (1) to accelerate before entering the main lane of traffic, (2) to allow another vehicle traveling faster to pass, and (3) to avoid a collision. TEX. TRANSP. CODE ANN. § 545.058(a)(2), (5), (7). The State contends that the action was unnecessary and in violation of Section 545.058.

Appellant argues this case is similar to *Lothrop v. State*. In *Lothrop*, the defendant was driving west and the police officer east on a two-lane road. 372 S.W.3d at 189. The car that was driving in front of the defendant slowed down at a railroad crossing, and the defendant used the improved shoulder road to pass the car. *Id.* He was stopped for illegally driving on the improved shoulder and subsequently arrested for driving while intoxicated. *Id*. The police officer did not testify that using the improved shoulder was unnecessary or unsafe. *Id*. at 191. The Court of Criminal Appeals held that the police officer did not legally initiate the traffic stop because there was no reasonable suspicion the defendant committed the violation of driving

on an improved shoulder. *Id.* The court reasoned there was evidence the defendant legally drove on the improved shoulder under section 545.058(a)(4) because it was done out of necessity to pass a slowing car and safely. *Id.*

Relying on *Lothrop*, appellant contends that the State failed to show driving on the shoulder was unnecessary to achieve an approved purpose. Appellant argues that like in *Lothrop*, Deputy Armand did not testify that appellant's driving was unnecessary to accomplish one of the three purposes. Furthermore, appellant states the video demonstrates evidence that he drove on the improved shoulder legally. Appellant contends that Deputy Armand misunderstood the law by believing that driving on the improved shoulder is prima facie evidence of an offense.

This case is distinguishable from *Lothrop*. Unlike the defendant in *Lothrop*, who drove on the shoulder out of necessity to pass the car in front of him, the evidence in this case does not show that it was necessary for appellant to drive on the improved shoulder to achieve any of the three purposes he claims.

First, it was not necessary for appellant to drive on the shoulder to accelerate before entering the main traveled lane of traffic because he had an entire lane (the entrance ramp) to accelerate. The defendant in *Lothrop* was driving on a two-lane road that went opposite directions, and therefore had no choice but to drive on the improved shoulder to pass the other driver. *Id.* at 189. Here, appellant was not limited

in such a way. Rather, he had the entire entrance ramp that was parallel to the other car on the highway, which made driving on the improved shoulder unnecessary.

Second, it was not necessary for appellant to drive on the shoulder to allow the other car to pass. The other car was already in a separate lane from appellant, yet appellant continued to drive on the shoulder. The other car was capable of passing appellant regardless of whether appellant drove on the shoulder or drove legally in the entrance ramp lane. Thus, driving on the shoulder was unnecessary to achieve such a purpose.

Third, it was not necessary for appellant to drive on the improved shoulder to avoid a collision. Deputy Armand initially observed appellant's car driving on the improved shoulder from the time he entered the ramp all the way up the ramp. There was a wall separating the two main lanes of traffic and any other cars on the highway. Appellant was on the shoulder before he was in proximity to the other car. Because appellant was not in danger of colliding with the other car, it was not necessary for him to drive on the shoulder to avoid it. Because the record supports the officer's reasonable conclusion that it was unnecessary for appellant to drive on the improved shoulder for any of the permissible reasons, the officer had reasonable suspicion to initiate a traffic stop and detain appellant. *See Tyler v. State*, 161 S.W.3d 745, 750 (Tex. App.—Fort Worth 2005, no pet.).

## CONCLUSION

10

Because appellant was lawfully stopped because of a reasonable suspicion that he had committed the traffic violation of driving on an improved shoulder, the trial court did not err by overruling appellant's motion to suppress. Accordingly, we overrule appellant's sole issue on appeal.

We affirm the trial court's judgment.

Sherry Radack
Chief Justice

Panel consists of Chief Justice Radack and Justices Keyes and Massengale.

Do not publish. TEX. R. APP. P. 47.2(b).