**Opinion issued August 15, 2019**



In The

# Court of Appeals

For The

# First District of Texas

————————————

## NO. 01-18-00565-CV

————————————

**TEXAS DEPARTMENT OF PUBLIC SAFETY, Appellant**

**V.**

**CLAUDIA RENEE TAUNTON, Appellee**

---

**On Appeal from the County Court at Law No. 3**
**Galveston County, Texas**
**Trial Court Case No. CV-80718**

---

## MEMORANDUM OPINION

Appellant, the Texas Department of Public Safety ("DPS"), challenges the

trial court's judgment affirming an administrative order denying DPS's petition to

suspend the driver's license of appellee, Claudia Renee Taunton. In its sole issue,

DPS contends that the trial court erred in affirming the administrative order denying its petition to suspend Taunton's driver's license.

We affirm.

## Background

On May 5, 2017, Taunton was arrested for driving while intoxicated. DPS suspended Taunton's driver's license and served her with a Notice of Suspension.[1] Taunton requested an administrative hearing to contest the suspension of her driver's license.[2]

At the hearing, Texas Highway Patrol Trooper R. Woodard testified that while driving behind Taunton on FM-517 in Galveston County, Texas on May 5, 2017, he saw her drive her car "over onto the shoulder several times." Woodard further testified that there was other traffic on the road at the time and, in his opinion, Taunton's driving her car onto the shoulder on multiple occasions created an unsafe condition on the road. Woodard testified that he could not recall the exact number of times that Taunton drove her car onto the improved shoulder "without reviewing" his video recording of the event, but he recalled that "she didn't just touch the line; she actually drove onto the shoulder" with her car. He further testified that she did not drive her car into oncoming traffic and there were no other cars stopped on the shoulder at the time.

---

[1]    *See* TEX. TRANSP. CODE ANN. §§ 542.012–.014.

[2]    *See id.* § 524.031.

As a result of the manner of Taunton's driving, Woodard initiated a traffic stop. He noticed that Taunton's eyes were red and glassy. She admitted to "drinking one mixed alcohol drink in Galveston." Woodard performed multiple field-sobriety tests on Taunton, which she failed. She then consented to give two voluntary breath specimens, which both provided results of blood alcohol content above the legal limit.[3]

After considering the evidence and argument of counsel, the administrative law judge ("ALJ") made findings of fact that Taunton was "stopped for driving [her car] partially onto the improved shoulder of the roadway on several occasions," "there is insufficient evidence to establish that [Taunton's] driving was unsafe or posed a risk to other motorists," there "was insufficient evidence to establish reasonable suspicion to stop or contact" Taunton. As such, the ALJ concluded that "the evidence presented . . . was insufficient to establish all the issues/elements set out in Tex. Transp. Code Ann. § 524.035 or 724.042 by a preponderance of the evidence." DPS appealed the ALJ's ruling.[4]

After reviewing the administrative record and hearing the arguments of counsel, the trial court found that there was "insufficient evidence was established to prove that [Taunton's] driving was unsafe or posed a risk to other motorists." Accordingly, the trial court rendered judgment affirming the administrative order.

---

[3] *See* TEX. PENAL CODE ANN. § 49.01(2)(B).

[4] *See* TEX. TRANSP. CODE ANN. § 524.041.

3

## Standard of Review

Judicial review of administrative license-suspension decisions is governed by a "substantial evidence standard." *Mireles v. Tex. Dep't of Pub. Safety*, 9 S.W.3d 128, 131 (Tex. 1999). When reviewing an administrative decision under the substantial evidence rule, the reviewing court "may affirm the [administrative] decision in whole or in part." TEX. GOV'T CODE ANN. § 2001.174(1). However, it must reverse or remand the case if the challenger's "substantial rights . . . have been prejudiced because the administrative findings, inferences, conclusions, or decisions are (A) in violation of a constitutional or statutory provision, (B) in excess of the agency's statutory authority, (C) made through an unlawful procedure, (D) affected by other error of law, (E) not reasonably supported by substantial evidence when considering the reliable and probative evidence in the record as a whole, or (F) arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion. *See id.* § 2001.174(2)*; see also Tex. Dep't of Pub. Safety v. Guajardo*, 970 S.W.2d 602, 604–05 (Tex. App.—Houston [14th Dist.] 1998, no pet.).

Whether substantial evidence supports an administrative order is a question of law. *Tex. Dep't of Pub. Safety v. Alford*, 209 S.W.3d 101, 103 (Tex. 2006). The dispositive issue for the reviewing court is not whether the administrative order was correct, but "whether the record demonstrates some reasonable basis for the

4

[administrative] action." *Mireles*, 9 S.W.3d at 131. We must presume that the agency's decision is supported by substantial evidence. *Tex. Dep't of Pub. Safety v. Walter*, 979 S.W.2d 22, 27 (Tex. App.—Houston [14th Dist.] 1998, no pet.). Furthermore, the reviewing court must affirm the administrative decision if more than a scintilla of evidence supports it and may affirm "even if the evidence preponderates against it." *Mireles*, 9 S.W.3d at 131. We may not substitute our judgment that of the ALJ with regard to the weight or credibility of the evidence. TEX. GOV'T CODE ANN. § 2001.174; *Mireles*, 9 S.W.3d at 131.

### Reasonable Suspicion

In its sole issue, DPS argues that the trial court erred in affirming the administrative order denying its petition to suspend Taunton's driver's license because Trooper Woodard had a reasonable suspicion for initiating a traffic stop after Taunton crossed onto the shoulder of the road on multiple occasions while driving her car.

DPS must suspend the driving privileges of anyone it determines had an alcohol concentration level of .08 grams or greater while operating a motor vehicle in a public place. *See* TEX. TRANSP. CODE ANN. § 524.012(b)(1); *see also* TEX. PENAL CODE ANN. § 49.01(2)(B) (defining "intoxicated" as having a blood alcohol concentration of 0.08 or more). To prevail at a license-suspension hearing, DPS is required to prove by a preponderance of the evidence that (1) the operator of a

motor vehicle had an alcohol concentration of a level of .08 or greater, while operating a motor vehicle in a public place, and (2) there existed a "reasonable suspicion to stop or probable cause to arrest" the operator. *See* TEX. TRANSP. CODE ANN. §§ 524.035(a)(1)(A), 524.035(a)(2). It is undisputed that Taunton's blood alcohol concentration was above a level of .08, so the only issue before the ALJ was whether there existed a "reasonable suspicion to stop or probable cause to arrest" Taunton.

A law enforcement officer may stop and briefly detain a person for investigative purposes if the officer has a reasonable suspicion, supported by articulable facts, "that the person detained actually is, has been, or soon will be engaged in criminal activity." *See Tex. Dep't of Pub. Safety v. Chang*, 994 S.W.2d 875, 877 (Tex. App.—Austin 1999, no pet.). The burden is on the State to demonstrate the reasonableness of the stop. *See id.* (citing *McVickers v. State*, 874 S.W.2d 662, 664 (Tex. Crim. App. 1993)). If a law enforcement officer has a reasonable basis for suspecting a person has committed a traffic offense, the officer may legally initiate a traffic stop. *McVickers*, 874 S.W.2d at 664; *Chang*, 994 S.W.2d at 877. The State is not required to show that a traffic offense was actually committed, but only that the officer reasonably believed that a violation was in progress. *Valencia v. State*, 820 S.W.2d 397, 400 (Tex. App.—Houston [14th Dist.] 1991, pet. ref'd).

6

Here, DPS argued that Trooper Woodard reasonably that believed a violation of Texas Transportation Code section 545.058(a) was in progress because Taunton crossed the line and drove her car onto the improved shoulder of the road on multiple occasions.

Texas Transportation Code section 545.058(a) provides:

An operator [of a motor vehicle] may drive on an improved shoulder to the right of the main traveled portion of a roadway if that operation is necessary and may be done safely, but only if:

> (1) to stop, stand, or park;
>
> (2) to accelerate before entering the main traveled lane of traffic;
>
> (3) to decelerate before making a right turn;
>
> (4) to pass another vehicle that is slowing or stopped on the main traveled portion of the highway, disabled, or preparing to make a left turn;
>
> (5) to allow another vehicle traveling faster to pass;
>
> (6) as permitted or required by an official traffic control device; or
>
> (7) to avoid a collision.

TEX. TRANSP. CODE ANN. § 545.058(a). In interpreting this statute, this Court has recognized that "[t]he word 'necessary' in the statute is not a free-standing requirement." *Morales v. State*, No. 01-16-00713-CR, 2017 WL 3184758, at *3 (Tex. App.—Houston [1st Dist.] July 27, 2017, no pet.) (mem. op., not designated

7

for publication) (citing *Lothrop v. State*, 372 S.W.3d 187, 190 (Tex. Crim. App. 2012)). And section 545.058(a) "does not set up a shifting-burden, self-defense-style framework." *Lothrop*, 372 S.W.3d at 191. Instead, "it shows that the offense of illegally driving on an improved shoulder can be proved in one of two ways: either driving on the improved shoulder was not a necessary part of achieving one of the seven approved purposes, or driving on the improved shoulder could not have been done safely." *Id.*

Furthermore, "[m]erely driving on an improved shoulder is not prima facie evidence of an offense." *Id.* at 191. If a law enforcement officer "sees a driver driving [her car] on an improved shoulder, and it appears that driving on the improved shoulder was necessary to achieving one of the seven approved purposes, and it is done safely, that officer does not have reasonable suspicion that an offense occurred." *Morales*, 2017 WL 3184758, at *3. As such, the act alone of driving on an improved shoulder cannot serve as the basis of a traffic stop or arrest. *Id.* Accordingly, in this case, to prevail before at the administrative hearing, DPS was required to prove, by a preponderance of the evidence, either that Taunton's driving of her car on the improved shoulder was not done pursuant to one of the seven approved purposes or driving on the improved shoulder could not have been done safely. *Id.*; *see also Chang*, 994 S.W.2d at 877 ("The burden is on the State to demonstrate the reasonableness of the stop.").

8

Trooper Woodard did not testify that he believed Taunton's driving of her car onto the improved shoulder was not for any of the reasons enumerated in section 545.058(a). Accordingly, the only way DPS could have prevailed on establishing reasonable suspicion by a preponderance of the evidence was to present evidence that Woodward believed that Taunton's driving to be unsafe. *See Lothrop*, 372 S.W.3d at 191; *Morales*, 2017 WL 3184758, at *3. Woodard testified, without elaboration, that he believed that Taunton's driving was unsafe. However, his testimony to this effect was a conclusory answer given in response to a question on direct examination as Woodard did not provide any explanation or basis for his conclusion that Taunton's driving was unsafe. *See Dallas Ry. & Terminal Co. v. Gossett*, 294 S.W.2d 377, 380 (Tex. 1956) ("It is well settled that the naked and unsupported opinion or conclusion of a witness does not constitute evidence of probative force and will not support a jury finding even when admitted without objection."); *see also Coastal Transp. Co. v. Crown Cent. Petroleum Corp.*, 136 S.W.3d 227, 232 (Tex. 2004) (explaining conclusory statements without probative force). Accordingly, we hold that there is substantial evidence to support the ALJ's finding that DPS failed to meet its burden to establish reasonable suspicion to stop of contact Taunton.[5]

---

[5] DPS argues that "there is no evidence in the record to support a finding that Taunton's driving on the shoulder was necessary to accomplish any of the seven lawful reasons for doing so, much less why she had to drive onto the shoulder

9

We overrule DPS's sole issue.

## Conclusion

We affirm the judgment of the trial court.

Julie Countiss
Justice

Panel consists of Justices Lloyd, Landau, and Countiss.

---

multiple times." This appears to be an attempt to shift the burden onto Taunton, which, as we have explained, belongs to DPS. There was no testimony from Trooper Woodward that he believed that Taunton had no permissible basis for driving onto the improved shoulder. This is different than requiring proof of a violation. As we explained in *Morales v. State*, driving onto an improved shoulder is not "prima facie" evidence of an offense. No. 01-16-00713, 2017 WL 3184758, at *3 (Tex. App.—Houston [1st Dist.] July 2017, no pet.) (mem. op., not designated for publication). Because the "legislature explicitly made this behavior legal, it would violate legislative intent to allow that behavior to serve as the basis of a traffic stop or arrest." *Id.* Absent testimony from Woodward that Taunton's driving of her car was unnecessary or unsafe, there would be no reasonable suspicion for a traffic stop. *Id.* Woodward did not testify that "using the improved shoulder was unnecessary"—only that it was unsafe, which, as we have explained, was a conclusory statement and not probative evidence on this point. *See id.* (citing *Lothrop v. State*, 372 S.W.3d 187, 191 (Tex. Crim. App. 2012)).