

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

No. 06-19-00258-CR

CARRIE KATHLEEN BURLESON, Appellant

V.

THE STATE OF TEXAS, Appellee

On Appeal from the 188th District Court
Gregg County, Texas
Trial Court No. 47800-A

Before Morriss, C.J., Burgess and Stevens, JJ.
Memorandum Opinion by Justice Stevens

MEMORANDUM OPINION

A Gregg County jury convicted Carrie Kathleen Burleson of possession of a controlled substance, methamphetamine, in an amount less than one gram, and assessed her two years' confinement in state jail.[1]  On appeal, Burleson complains that (1) the trial court erred in denying her motion to suppress evidence and (2) the evidence was legally insufficient to support her conviction.  Because we find that the trial court erred in denying the motion to suppress, we will reverse the trial court's judgment and remand this case for a new trial.

## I.      The Hearing on Burleson's Motion to Suppress

Burleson moved the trial court to suppress the evidence obtained as a result of a traffic stop by Texas Department of Public Safety (TDPS) Trooper Kurt Rappold of a vehicle in which she was a passenger.  As relevant to this appeal, in her motion to suppress, Burleson alleged that "the evidence seized and obtained was the result of an illegal . . . traffic stop and subsequent unconstitutional search of the vehicle in which [Burleson] was a passenger. . . . in violation of [her] constitutional rights under the Fourth and Fourteenth Amendments of the United States Constitution, Art. I, Section 9 of the Texas Constitution."

Rappold was the only witness at the motion to suppress hearing.  He testified as a video recording from his dash camera was played.  Rappold explained that, on November 5, 2017, he followed a Toyota on Interstate 20.  He observed the vehicle touch the white fog line[2] at the four second mark and again at the one minute, nine second mark, according to the time elapsed on the

---

[1]*See* TEX. HEALTH & SAFETY CODE ANN. § 481.115(b).

[2]In this case, the parties referred to the white, solid line on the outside border of the right, or outside, lane separating the driving lane from the improved shoulder as the "white fog line" or the "fog line."

2

recording. Rappold opined that at the two minutes, one second mark, the vehicle crossed over the fog line. He then activated his emergency lights and initiated the traffic stop. Rappold also acknowledged that, at the time the Toyota crossed over the fog line, a vehicle was passing the Toyota in the left lane.

Under examination by the State, Rappold affirmed that he stopped the Toyota for driving on an improved shoulder. He agreed, however, that Section 545.048 of the Texas Transportation Code specifies times when it is legal to drive on the improved shoulder. Rappold also noted that the Toyota was traveling between forty-five and fifty-five miles per hour, which he maintained was a safety concern. Still, he admitted that Interstate 20 did not have a minimum speed limit and that driving forty-five or fifty-five miles per hour was not illegal.

The recording from Rappold's dash camera was also admitted into evidence. The recording showed the Toyota, which was in the same lane and in front of Rappold's vehicle, driving in a relatively straight line and generally toward the outer one-half of the right lane. At both the four second mark and the one minute, nine second mark, the rear wheel of the vehicle appeared to momentarily touch the white fog line. At the one minute, fifty-eight second mark, a black sedan appeared in the left lane, passing Rappold and approaching the Toyota. At that time, the Toyota was driving on the outer half of the right lane near the white fog line. The black sedan continued to approach the Toyota, and at the two minute mark, it was in the left lane and even with the Toyota. At the same time, the Toyota's right rear wheel appears to have slightly crossed the white fog line. At the two minute, one second mark, the black sedan appeared to be near the front of the Toyota, and the Toyota's right rear wheel appeared to be mostly on the

3

white fog line. At the two minute, two second mark, as the black sedan appeared to complete its passing of the Toyota, the Toyota's right rear wheel was completely on the white fog line, and Rappold's emergency lights were activated. The Toyota then braked, activated its right turn signal, and moved to the improved shoulder.

## II.     Applicable Law and Standard of Review

Since "[a] traffic stop constitutes a Fourth Amendment seizure, . . . reasonable suspicion is required to conduct such a stop." *Oringderff v. State*, 528 S.W.3d 582, 584 (Tex. App.—Texarkana 2017, no pet.) (citing *Berkemer v. McCarty*, 468 U.S. 420, 439 (1984); *Ford v. State*, 158 S.W.3d 488, 492 (Tex. Crim. App. 2005)). "An officer may make a warrantless traffic stop if the 'reasonable suspicion' standard is satisfied." *State v. Cortez*, 543 S.W.3d 198, 204 (Tex. Crim. App. 2018) (quoting *Jaganathan v. State*, 479 S.W.3d 244, 247 (Tex. Crim. App. 2015)). "Reasonable suspicion exists if the officer has 'specific articulable facts that, when combined with rational inferences from those facts, would lead him to reasonably suspect that a particular person has engaged or is (or soon will be) engaged in criminal activity.'" *Id.* (quoting *Jaganathan*, 479 S.W.3d at 247 (quoting *Abney v. State*, 394 S.W.3d 542, 548 (Tex. Crim. App. 2013)).

"We review a reasonable suspicion determination by considering the totality of the circumstances." *Id.* (citing *Garcia v. State*, 43 S.W.3d 527, 530 (Tex. Crim. App. 2001)). "When a police officer stops a defendant without a warrant, the State has the burden of proving the reasonableness of the stop at a suppression hearing." *Id.* (citing *Russell v. State*, 717 S.W.2d 7, 9–10 (Tex. Crim. App. 1986), *disapproved of on other grounds by Handy v. State*, 189 S.W.3d

296, 299 n.2 (Tex. Crim. App. 2006)). Here, Burleson was arrested without a warrant, so the State had the burden to prove that the initial traffic stop was legal. *See id.*; *Ford*, 158 S.W.3d at 492.

"A trial court's ruling on a motion to suppress is reviewed on appeal for abuse of discretion." *Cortez*, 543 S.W.3d at 203 (quoting *Crain v. State*, 315 S.W.3d 43, 48 (Tex. Crim. App. 2010)). The trial court's decision will be sustained if it is correct under any applicable theory of law. *Id.* We will reverse the trial court's ruling "only if it is arbitrary, unreasonable, or 'outside the zone of reasonable disagreement.'" *Id.* (quoting *State v. Story*, 445 S.W.3d 729, 732 (Tex. Crim. App. 2014)).

We determine whether a law enforcement officer's "reasonable suspicion of criminal activity" is supported by the totality of the circumstances using a bifurcated standard of review: "[f]irst, we 'give "almost total deference to the trial court's determination of the historical facts that the record supports," and second, we review *de novo* the trial court's application of the law to facts, which do not turn on credibility and demeanor.'" *Id.* at 203–04 (quoting *Abney v. State*, 394 S.W.3d 542, 547 (Tex. Crim. App. 2013) (citing *Amador v. State*, 275 S.W.3d 872, 878 (Tex. Crim. App. 2009)). Moreover, "we review *de novo* whether the totality of circumstances is sufficient to support an officer's reasonable suspicion of criminal activity." *Id.* at 204 (quoting *Crain*, 315 S.W.3d at 49).

When, as here, the trial court makes findings of fact, "we view the evidence in the light most favorable to [its] ruling and determine whether the evidence supports th[o]se factual findings." *Valtierra v. State*, 310 S.W.3d 442, 447 (Tex. Crim. App. 2010) (citing *State v. Kelly*,

5

204 S.W.3d 808, 818 (Tex. Crim. App. 2006)). We also "assume the trial court made implicit findings of fact that support its ruling as long as those findings are supported by the record." *Id*. (quoting *Harrison v. State*, 205 S.W.3d 549, 552 (Tex. Crim. App. 2006) (quoting *State v. Ross*, 32 S.W.3d 853, 855 (Tex. Crim. App. 2000)).

## III. The State's Burden Under Section 545.058 of the Texas Transportation Code

Section 545.058(a) of the Texas Transportation Code provides:

> (a)   An operator may drive on an improved shoulder to the right of the main traveled portion of a roadway if that operation is necessary and may be done safely, but only:
>
>> (1)   to stop, stand, or park;
>>
>> (2)   to accelerate before entering the main traveled lane of traffic;
>>
>> (3)   to decelerate before making a right turn;
>>
>> (4)   to pass another vehicle that is slowing or stopped on the main traveled portion of the highway, disabled, or preparing to make a left turn;
>>
>> (5)   to allow another vehicle traveling faster to pass;
>>
>> (6)   as permitted or required by an official traffic-control device; or
>>
>> (7)   to avoid a collision.

Tex. Trans. Code Ann. § 545.058(a) (Supp.).[3]   Thus, it is legal to drive on an improved shoulder when it is safe to do so and it is necessary to achieve one of the seven listed purposes.

---

[3]"Improved shoulder" is defined as "a paved shoulder." Tex. Trans. Code Ann. § 541.302(6). "Shoulder" is defined as "the portion of a highway that is:  (A) adjacent to the roadway; (B) designed or ordinarily used for parking; (C) distinguished from the roadway by different design, construction, or marking; and (D) not intended for normal vehicular travel." Tex. Trans. Code Ann. § 541.302(15).

6

*See Cortez*, 543 S.W.3d at 205, 207–08; *Lothrop v. State*, 372 S.W.3d 187, 191 (Tex. Crim. App. 2012). Since the Legislature explicitly made driving on an improved shoulder to achieve any of the seven purposes legal, "[i]t would violate legislative intent to allow that behavior to serve as the basis of a traffic stop or arrest." *Lothrop*, 372 S.W.3d at 191.

On the other hand, "if it appears that driving on the improved shoulder was not necessary to achieving one of the seven approved purposes *or* it appears that driving on the improved shoulder could not be done safely," then driving on the improved should would be a traffic violation, and "an officer would have reasonable suspicion to stop a vehicle that was driving on an improved shoulder." *Cortez*, 543 S.W.3d at 205. For that reason, to show that Rappold had a reasonable suspicion that the driver of the Toyota had illegally driven on the improved shoulder, the State had to show either (1) that driving on the improved shoulder was not necessary to achieving one of the seven approved purposes or (2) that driving on the improved shoulder could not be done safely.

## IV.    Analysis

As relevant to this appeal, the trial court entered these findings of fact in support of its denial of the motion to suppress:

> II.    On November 5, 2017, . . . Rappold saw a vehicle cross the "fog" line at least two times.

> III.    Said vehicle, according to the admitted video, drove upon the improved shoulder.

The trial court also entered its conclusion of law that "a lawful stop was initiated by . . . Rappold for unlawful driving on the improved shoulder." The trial court's express findings of fact do not,

7

by themselves, support the trial court's denial of the motion to suppress since there was no finding that driving on the improved shoulder was not necessary to achieving one of the seven allowable purposes or that driving on the improved shoulder could not be done safely.[4] As a result, we must determine whether the record would support an assumption that the trial court implicitly found either of these conditions.

Neither Rappold's testimony nor the recording provides any evidentiary support that the Toyota's right rear wheel's slight, momentary incursion across the white fog line could not have been done safely. Rappold also did not testify to any conditions that made that incursion unsafe. The recording shows that the vehicle made the incursion and almost immediately returned to the traffic lane, without incident. As a result, the record would not support a finding that driving on the improved shoulder could not have been done safely.

Nor does the record support an implicit finding that driving on the improved shoulder was not necessary to achieving any of the seven allowable purposes. The recording showed, and Rappold acknowledged, that at the moment the Toyota's right rear wheel slightly crossed the white fog line, a black sedan was passing it in the left lane. Thus, the relevant permissible purpose here was "to allow another vehicle travelling faster to pass." *See* TEX. TRANS. CODE ANN. § 545.058(a)(5) (Supp.).

The Texas Court of Criminal Appeals has recently discussed the circumstances that would constitute permissible driving on the improved shoulder under Section 545.058(a)(5). *See*

---

[4]We also note that the evidence, viewed in the light most favorable to the trial court's ruling, does not support the finding that Rappold saw the vehicle cross the fog line at least two times. Although Rappold's testimony was somewhat unclear, the recording showed only one momentary breach of the fog line before Rappold began the traffic stop.

8

*Cortez*, 543 S.W.3d at 207–08. In *Cortez*, a TDPS trooper followed a minivan on Interstate 40 and initiated a traffic stop because Cortez had twice driven on the unimproved shoulder, once when the trooper was driving next to the minivan and once when Cortez was exiting the highway. *Id.* at 201–02. The Texas Court of Criminal Appeals at first upheld the trial court's granting of the motion to suppress because it was not clear that the minivan ever crossed the fog line, noting that Texas appellate courts and the courts of other jurisdictions "have held that a person drives on the improved shoulder when they *cross over* the fog line." *Id.* at 206

That said, the court went on to hold, "**Even if Cortez[] crossed over the fog line, he was statutorily permitted to do so**." *Id.* at 207. The court explained that

> because section 545.058(a)(5) allows a driver to drive on an improved shoulder to "allow another vehicle traveling faster to pass," and since it appeared that the Trooper was intending to pass Cortez's vehicle on the left, Cortez was statutorily permitted to drive on the improved shoulder during that very brief period of time.

*Id.* at 208. Here, the evidence showed that the black sedan was in fact passing the Toyota at the same time that its right rear tire slightly crossed over the fog line. Assuming this slight and very brief breach of the fog line constituted driving on the improved shoulder,[5] such driving was

---

[5]We note that the Texas Court of Criminal Appeals in *Cortez* did not decide whether a single, brief crossing over the fog line would constitute driving on the improved shoulder. The court noted:

> Even a driver who is sober, alert, and careful may occasionally drift within their lane only because the roadway surface is not perfectly smooth. Moreover, drivers are not able to see if their tires are touching the fog line. They are likely to veer over at some point and touch the fog line alongside the roadway without being aware they have done so. Some lane boundaries have raised reflective pavement markers or road grooves in the asphalt, rather than painted lines, to alert drivers when they are veering too close to another lane or are about to cross over into the shoulder. Sometimes these road grooves are *on* the fog line, sometimes they are *alongside* the outer edge of the painted fog line.

*Cortez*, 543 S.W.3d at 206. Likewise, we do not decide whether the brief crossing over of the fog line here constituted driving on the improved shoulder.

permitted. For that reason, the evidence would not support an implicit finding that driving on the improved shoulder was not necessary to allow another vehicle travelling faster to pass.[6]

Considering the totality of the circumstances, we find that the State did not show Rappold had a reasonable suspicion based on "specific articulable facts that, when combined with rational inferences from those facts, would lead him to reasonably suspect that" the driver of the Toyota had illegally driven on the improved shoulder.

The State also argues that the traffic stop was valid because Rappold made a reasonable mistake of law, citing *Heien v. North Carolina*, 574 U.S. 54 (2014). The State maintains that Rappold's belief that simply having the tires of a vehicle cross into the improved shoulder was a violation of Section 545.058(a) constituted a reasonable, if erroneous, interpretation of Section 545.058(a). First, we note that the record shows that that was not Rappold's understanding of the law. At the hearing, Rappold agreed that Section 545.058(a) stated that a driver may drive on the improved shoulder in some cases, including to allow a vehicle travelling faster to pass. Further, although *Heien* held that, in some cases, an officer's reasonable suspicion that a driver had violated a traffic law could be upheld when he made a reasonable mistake of law in interpreting the statute, the United States Supreme Court made clear that any mistake of law must be *objectively* reasonable. *Id*. at 66. The Court then emphasized that "an officer can gain no Fourth Amendment advantage through a sloppy study of the laws he is duty-bound to enforce." *Id*. at 67.

---

[6]The trial court did not find, and the State does not argue in its brief, that there were any other circumstances that justified the traffic stop.

Here, even if Rappold mistakenly believed that the simple crossing of the right tires of a vehicle onto the improved shoulder constituted illegally driving on the improved shoulder, irrespective of the other traffic circumstances, such belief was not objectively reasonable. As noted above, Section 545.058(a) sets forth seven purposes for which a person may legally drive on the improved shoulder. Further, five years before the traffic stop in this case, the Texas Court of Criminal Appeals opined,

> Merely driving on an improved shoulder is not prima facie evidence of an offense. Thus if an officer sees a driver driving on an improved shoulder, and it appears that driving on the improved shoulder was necessary to achieving one of the seven approved purposes, and it is done safely, that officer does not have reasonable suspicion that an offense occurred.

*Lothrop*, 372 S.W.3d at 191. This controlling precedent belies the argument that Rappold had a reasonable belief that merely driving on an improved shoulder was an offense.[7]

Since the record does not show that Rappold had a reasonable suspicion to stop the Toyota for illegally driving on an improve shoulder and Rappold's purported mistake of law was not objectively reasonable, we find that the trial court abused its discretion in denying Burleson's motion to suppress the evidence found as a result of the stop. We, therefore, sustain Burleson's first issue.

---

[7]In its brief, the State also cites cases from several Texas courts of appeals in support of its argument. Yet, in each case cited by the State, the courts of appeals noted that no evidence showed that any of the seven permissible purposes for driving on the improved shoulder applied. *See Stegal v. State*, No. 05-16-00098-CR, 2017 WL 1536516, at *3 (Tex. App.—Dallas Apr. 26, 2017, no pet.) (mem. op., not designated for publication); *State v. Dietiker*, 345 S.W.3d 422, 425 (Tex. App.—Waco 2011, no pet.); *State v. Hannath*, No. 01-08-00452-CR, 2010 WL 3833919, at *5 (Tex. App.—Houston [1st Dist.] Sept. 30, 2010, no pet.) (mem. op., not designated for publication); *Tyler v. State*, 161 S.W.3d 745, 750 (Tex. App.—Fort Worth 2005, no pet.).

## V. Harm Analysis

Since we found error in the trial court's failure to suppress the evidence found as a result of the unjustified stop, we consider whether the error harmed Burleson. *See State v. Daugherty*, 931 S.W.2d 268, 273 (Tex. Crim. App. 1996). Since the error was constitutional, we "must reverse a judgment of conviction . . . unless [we] determine[] beyond a reasonable doubt that the error did not contribute to the conviction." TEX. R. APP. P. 44.2(a). After detaining Burleson and the other occupants of the Toyota, Rappold searched the vehicle and found drug paraphernalia and 0.83 grams of methamphetamine. This evidence ultimately led to Burleson's conviction for possession of less than one gram of methamphetamine. We cannot say beyond a reasonable doubt that the failure to suppress this evidence did not contribute to Burleson's conviction. We, therefore, find that Burleson was harmed by the trial court's error.

## VI. Conclusion

For the reasons stated, we reverse the trial court's judgment, and we remand this case to the trial court for further proceedings consistent with this opinion.[8]

Scott E. Stevens
Justice

Date Submitted:     April 8, 2020
Date Decided:       April 17, 2020

Do Not Publish

---

[8]Because of our resolution of the suppression issue, it is not necessary to address Burleson's other issue.