

# In The
# Court of Appeals
# Seventh District of Texas at Amarillo

No. 07-15-00196-CR

THE STATE OF TEXAS, APPELLANT

V.

JOSE LUIS CORTEZ, APPELLEE

On Appeal from the 108th District Court
Potter County, Texas
Trial Court No. 68,587-E, Honorable Douglas Woodburn, Presiding

November 18, 2015

## OPINION

Before QUINN, C.J., and HANCOCK and PIRTLE, JJ.

At the suppression hearing, the trooper was asked: "So you're telling the Court that because you see a van, it's clean and it's got two people in it, that [sic] was indicators of potential criminal activity for you?" The trooper answered: "Yes, sir, they are. They -- in and of themselves are nothing, but in the total -- when you start adding them all together, they can be." When two people in a clean car indicate criminal

activity then the words of John Lennon have come to fruition . . . "Strange days indeed - - most peculiar, mama."[1]

Nonetheless, the foregoing circumstances led the trooper to first follow Cortez's minivan down Interstate 40 and then stop him after it may have twice crossed onto but not over the "fog line" appearing on the right side of the lane.[2] Cortez believed that the stop was illegal. The trial court agreed and granted his motion to suppress evidence. This decision, according to the State, evinced an abuse of discretion, and the findings of fact and conclusions of law issued by the trial court to support it allegedly lacked evidentiary basis. We affirm.

*Applicable Law*

First, the applicable standard of review is that enunciated in *State v. Iduarte*, 268 S.W.3d 544 (Tex. Crim. App. 2008). There, we are told that:

> When reviewing the trial court's ruling on a motion to suppress, we view the evidence in the light most favorable to the trial court's ruling. (Citation omitted). When the trial court makes explicit fact findings, we determine whether the evidence, when viewed in the light most favorable to the trial court's ruling, supports those findings. (Citation omitted). We review the trial court's legal ruling *de novo*. We uphold the trial court's ruling if it is supported by the record and correct under any theory of law applicable to the case. (Citation omitted).

[and]

> We afford a great deal of deference to a trial judge's rulings on questions of historical fact, and also on rulings that both apply the law to facts and turn on an evaluation of credibility and demeanor. (Citation omitted). Nonetheless, mixed questions of law and fact may be reviewed *de novo* when they do not depend on credibility or disputed facts. (Citation omitted). This case presents mixed questions of law and fact, and we will therefore review the trial court's findings of fact and conclusions of law *de novo*.

---

[1] From the song "Nobody Told Me."

[2] The solid white line found on the right side of a traffic lane has come to be called the fog line.

*Id.* at 548-49; *accord*, *Jaganathan v. State*, No. PD-1189-14, 2015 Tex. Crim. App. LEXIS 920, at *7 (Tex. Crim. App. September 16, 2015) (criticizing the intermediate appellate court because it "did not view the record in the light most favorable to the trial court's ruling").

Second, when a warrantless stop is made, the burden lies with the State to prove its legitimacy. *Grimaldo v. State*, 223 S.W.3d 429, 432 (Tex. App.—Amarillo 2006, no pet.). It may fulfill the burden by illustrating that the law enforcement official making the stop had reasonable suspicion to believe a traffic infraction occurred. *See Jaganathan v. State*, 2015 Tex. Crim. App. LEXIS 920, at *5 (stating that "[a]n officer may make a warrantless traffic stop if the 'reasonable suspicion' standard is satisfied"). Such suspicion arises when the officer has "'specific articulable facts that, when combined with rational inferences from those facts, would lead him to reasonably suspect that a particular person has engaged or is (or soon will be) engaging in criminal activity.'" *Id.*, *quoting, Abney v. State*, 394 S.W.3d 542, 548 (Tex. Crim. App. 2013).

Third, and as previously mentioned, the traffic infraction at issue here involved Cortez supposedly driving on an improved shoulder. Per § 545.058(a) of the Texas Transportation Code, one operating a motor vehicle ". . . may drive on an improved shoulder to the right of the main traveled portion of a roadway if that operation is necessary and may be done safely, but only . . ." under seven enumerated circumstances. TEX. TRANSP. CODE ANN. § 545.058(a) (West 2011). Those seven circumstances consist of 1) "to stop, stand, or park," 2) "to accelerate before entering the main traveled lane of traffic," 3) "to decelerate before making a right turn," 4) "to pass another vehicle that is slowing or stopped on the main traveled portion of the

3

highway, disabled, or preparing to make a left turn," 5) "to allow another vehicle traveling faster to pass," 6) "as permitted or required by an official traffic-control device," or 7) "to avoid a collision." *Id.*[3] The legislature defined "improved shoulder" to mean "a paved shoulder." *Id.* § 541.302(6). It defined "shoulder" to mean that "portion of a highway" 1) "adjacent to the roadway," 2) "designed or ordinarily used for parking," 3) "distinguished from the roadway by different design, construction, or marking," and 4) "not intended for normal vehicular travel." *Id.* § 541.302(15). Noticeably absent from both these definitions and § 545.058(a) of the Transportation Code is any reference to a solid white line or "fog line."

*Application of Law*

Again, the trial court granted Cortez's motion to suppress and executed written findings of fact and conclusions of law supporting its decision. Among the findings were those stating that:

> 7. [The trooper] began following the Defendant's vehicle while Defendant's vehicle was traveling in an easterly direction in the right hand lane of the four lane roadway. He then sped up and pulled into the left hand lane as his vehicle approached the Defendant's vehicle. As [the trooper's] vehicle approached and pulled into the left hand lane, Defendant's vehicle moved toward the improved shoulder.

> 8. A short time later, Defendant's vehicle moved toward the improved shoulder a second time as the Defendant's vehicle exited the Interstate to the right at a marked exit ramp.

---

[3] At this point, though, it should be noted that simply driving on an improved shoulder is not prima facie evidence of a crime. *Lothrop v. State*, 372 S.W.3d 187, 191 (Tex. Crim. App. 2012). Indeed, ". . . if an officer sees a driver driving on an improved shoulder, and it appears that driving on the improved shoulder was necessary to achieving one of the seven approved purposes, and it is done safely, that officer does not have reasonable suspicion that an offense occurred." *Id.* So, before § 545.058(a) can be the basis of a traffic stop, the officer must see not only the prospective detainee driving on the shoulder but also the absence of those circumstances permitting the person to so drive. *See id.* (concluding that the State did not satisfy its burden to prove reasonable suspicion since the officer failed to testify that Lothrop's attempt to pass a slower moving vehicle appearing in his lane by driving on the improved shoulder was unsafe or unnecessary).

4

9. [The trooper] stated he stopped Defendant's vehicle because he observed [] the Defendant's vehicle drive on the improved shoulder of the roadway on the two occasions noted above, each of which event he believed to constitute violations of state traffic laws.

10. During the suppression hearing, an oral and video tape recorded by equipment maintained in [the trooper's] patrol vehicle was played. On the tape, [the trooper] approached the driver's side of the van and told Defendant that he stopped the Defendant because he had *driven ... "onto the white line, that little white line."*

11. The video recording played at the hearing clearly demonstrated each of the two occasions upon which [the trooper] testified he had observed the Defendant's vehicle drive upon the improved shoulder. On each occasion the right rear tire (or its shadow) was observed by the Court to come in *the proximity of and possibly touch* the inside portion or more of the white line delineating the roadway from the improved shoulder (referred in testimony, and hereinafter, as the "fog line") but not to extend past the [] outermost edge of the fog line.

[and]

12. The [S]tate produced no evidence that [the trooper] observed, or believed he had observed, any portion of the Defendant's vehicle pass outside the outermost edge of the fog line.

(Emphasis added). Under the category of conclusions of law, the trial court wrote:

21. The improved shoulder of a state roadway begins at the point of the fog line which is furthest from the center of the roadway.

22. The Defendant's vehicle did not cross outside the outermost edge of the fog line onto the improved shoulder of the roadway. Crossing over the portion of the fog line nearest the center of the roadway or upon the fog line is not a violation of Texas traffic law; *therefore the vehicle was not operated on the improved shoulder of the roadway on either occasion made the basis for the [trooper's] traffic stop*.

23. Texas Transportation Code section 545.058 (5) provides that driving on the improved shoulder of a roadway is permissible under the circumstances when and to the extent necessary a driver is being passed by another vehicle. The first occasion in which the officer testified that the Defendant drove onto the improved shoulder occurred after the officer's vehicle entered the passing lane and accelerated toward the Defendant's

vehicle; therefore, the Defendant was authorized by statute to drive on the improved shoulder at such time.

[and]

24. Texas Transportation Code section 545.058 (3) provides that driving on the improved shoulder of a roadway is permissible when and to the extent necessary a driver is decelerating or slowing to make a right turn from the roadway. The Defendant was in the process of decelerating and slowing to make a right turn from the roadway onto the exit ramp when the second occasion took place; therefore, the Defendant was authorized by statute to drive on the improved shoulder at such time.

(Emphasis added). The video alluded to in the trial court's findings appears in the appellate record.

Upon playing that video, we encountered a rather dark and grainy depiction of the stop and events leading up to it. They obviously occurred at night, on a dimly lit Interstate, its off-ramp and its adjacent access road. And whether the passenger-side tires of the vehicle touched the "fog line" is not easily discerned. No doubt the vehicle approached the line twice, but its wheels may or may not have crossed onto or over it. Indeed, what could be seen as a possible touching could have been nothing more than the shadow of the vehicle moving into the area thought prohibited by the trooper. This lack of clarity is of import here for it requires us to defer to the trial court's interpretation of the events captured in the video.[4]  *See Velasquez v. State*, No. 07-12-00002-CR, 2013 Tex. App. LEXIS 8246, at *13 (Tex. App.—Amarillo July 2, 2013, no pet.) (stating that "we give almost total deference to the trial court's factual determinations unless the video recording indisputably contradicts the trial court's findings"). Missing from those findings is one wherein the trial court determined that Cortez crossed over the solid

---

[4] That the content of the video weighed heavily in the trial court's decision cannot be reasonably disputed. One need only read the transcript of the reporter's record to realize that.

white line bordering the right of the traffic lane. Rather, it found that Cortez's vehicle came "in the proximity of and possibly touch[ed] the inside portion or more of the white line . . . but [did] not to extend past the [] outermost edge of the fog line." Additionally, we find evidence of record supporting that interpretation of what transpired in the video.

However, our job is not over given the tenor of the State's argument and the trial court's response to it. The former argued that the mere encroachment upon the "fog line" equates driving upon an improved shoulder while the latter concluded that "[c]rossing over the portion of the fog line nearest the center of the roadway or upon the fog line is not a violation of Texas traffic law," that is, § 545.058(a). So, what we have before us is a question that one could liken to splitting hairs, or in this case, a four inch white line. Which does § 545.058(a) mandate before one can be deemed as driving on an improved shoulder . . . simply touching the "fog line" or proceeding beyond it? Obviously, the trial court read the statute as requiring the driver to proceed beyond or to cross over the line, not merely to cross onto it.

Again, the statutes at issue say nothing of a "fog line" or "solid white line." Those words appear nowhere in § 541.302 or § 545.058 of the Transportation Code. Instead, those provisions speak of driving on an "improved shoulder," "shoulder," "paved shoulder," or a "portion of a highway" "adjacent to the roadway . . . designed and ordinarily used for parking . . . [while] distinguished from the roadway by different design, construction, or marking . . . [and] not intended for normal vehicular travel." Yet, some four inch line painted on the roadway by someone whom the record fails to identify is the focal point of not only this case but most every other case involving § 545.058(a). *See e.g, State v. Dietiker*, 345 S.W.3d 426 (Tex. App.—Waco 2011, no

7

pet.) (noting that the "fog line" was "crossed"); *Thomas v. State*, 420 S.W.3d 195 (Tex. App.—Amarillo 2013, no pet.) (noting the same); *Tyler v. State*, 161 S.W.3d 745, 749-50 (Tex. App.—Fort Worth 2005, no pet.) (noting the same).

Nonetheless, all here seem to agree that the "fog line" identifies the boundary between a lane of traffic and its adjacent shoulder. For purposes of this opinion, we will join them and also agree that the "fog line" serves as such a boundary. *See State v. Huddleston*, 164 S.W.3d 711, 714 n.1 (Tex. App.—Austin 2005, no pet.) (describing the "fog line" as such a boundary). Being a "boundary," the line in question can be construed as showing "where an area ends and another area begins." *Boundary Definition*, MERRIAM-WEBSTER, http://www.merriam-webster.com/dictionary/boundary (last visited November 17, 2015) (defining "boundary" as "something . . . that shows where an area ends and another area begins"). That is, on one side lies the lane of traffic while on the other lies the improved shoulder. And, if the areas lie on either side of the line then logic suggests that the line must be crossed over before one area has been left and another entered. Indeed, one does not enter Mexico from Texas until he crosses the boundary between Texas and Mexico. Nor does one enter Louisiana from Texas until he crosses the boundary between those two States. While we do not deal with leaving one State for another here, we do deal with geographic areas separated by a line. So, our analogy to crossing borders between States is no less apt here. Until a portion of the vehicle driven by Cortez crossed beyond the "fog line" from the area known as his lane of traffic to the area known as the improved shoulder, it cannot be said that he drove on an improved shoulder. We, like the trial court, interpret

8

§ 545.058(a) as requiring as much. And, again, the trial court determined that while the vehicle crossed onto the line it never crossed over it.[5]

That the State cites to no authority indicating that the "fog line" need only be touched to give rise to a violation of § 545.058(a) is telling, as is our inability to find any such authority. Indeed, each opinion we discovered wherein a violation of that statute was found to have legitimized a traffic stop involved the detainee crossing the line, not simply touching it. *See e.g. State v. Dietiker, supra.*

Nor do we find significance in the State's argument about the trooper's personal interpretation of the statute of consequence. As stated by our Court of Criminal Appeals, "[a]n officer's mistake about the law, or about the legal significance of undisputed facts, *even if* eminently reasonable, cannot serve to provide probable cause or reasonable suspicion; it cannot, in other words, validate an otherwise invalid seizure." *Robinson v. State*, 377 S.W.3d 712, 722 (Tex. Crim. App. 2012) (emphasis in original); *accord, Abney v. State*, 394 S.W.3d 542, 549-50 (Tex. Crim. App. 2013) (stating that "[a]n officer's mistake about the legal significance of facts, even if made in good faith, cannot provide probable cause or reasonable suspicion" to make a traffic stop). It may be that the trooper believed that § 545.058(a) merely required someone to cross onto but not over a fog line. But, as we explained above, he was mistaken. So, his personal interpretation of the statute cannot validate the detention here.

---

[5] Contrary to the State's contention, the trial court did not find via conclusions of law numbers 23 and 24 that Cortez crossed over or beyond the line. Neither contains such language. More importantly, an attempt to somehow imply such a meaning in them would effectively negate the expressed language of conclusion number 22 and finding number 11. Both 11 and 23 clearly illustrate that Cortez may have encroached upon but did not cross beyond the "fog line." We cannot construe findings to be in conflict but must reconcile the conflicting findings, and harmonize the judgment with the findings of fact and conclusions of law upon which it is based. *See Morton v. Hung Nguyen*, 369 S.W.3d 659, 674 (Tex. App.—Houston [14th Dist.] 2012, *rev'd in part on other grounds*, 412 S.W.3d 506 (Tex. 2013)).

Similarly inconsequential is the State's allusion to § 541.302(5) of the Transportation Code as proof that the "fog line" itself constitutes part of the shoulder. That provision serves to define the words "highway or street" and, in doing so, states that they mean "the width between the boundary lines of a publically maintained way any part of which is open to the public for vehicular travel." TEX. TRANS. CODE ANN. § 541.302(5) (West 2011). The State supposes that one of the "boundary lines" must be the "fog line" to the right of the lane of traffic since it is a boundary. That supposition cannot withstand scrutiny, though. In § 541.302(5), the legislature is speaking about boundary lines of "a publically maintained way" where "part of which is open to the public for vehicular travel." Obviously, an improved shoulder is a publically maintained way given that it means "a paved shoulder." *Id.* § 541.302(6). If it is paved then someone must have maintained it at some time. Moreover, one may lawfully drive upon an improved shoulder, as illustrated by § 545.058(a) itself. Again, it begins with the phrase revealing that "[a]n operator *may drive* on an improved shoulder. . . ." *Id.* § 545.058(a) (emphasis added). If a "highway or street" includes the area between the boundary lines of a "maintained way" which is "open to the public for vehicular travel" and the improved shoulder not only is maintained but also subject to being driven upon by the public, then logically the improved shoulder must be part of the "highway or street." So, the "fog line" found left of an improved shoulder and well within the "highway or street" cannot be one of the "boundary lines" of the "highway or street."

In sum, we find reason in the words of the trial court in *State v. Tarvin*, 972 S.W.2d 910 (Tex. App.—Waco 1998, pet. ref'd). Driving is an exercise in controlled weaving. *Id.* at 911. It is difficult enough to keep a straight path on the many dips,

10

rises, and other undulations built into our roadways. To adopt the State's interpretation of § 545.058(a) and permit a trooper to stop someone for the slightest touch of a "fog line" while maneuvering over those undulations would push us further into the "strange days" mentioned earlier. We choose not to do that.

The factual record before us supports the trial court's finding that the vehicle Cortez drove failed to cross over the "fog line" onto the improved shoulder. Furthermore, the trial court's interpretation of § 545.058(a) comports with ours. Driving onto an improved shoulder requires something more than driving upon the four inches of a "fog line," like Cortez did here. *See Scardino v. State*, 294 S.W.3d 401 (Tex. App.—Corpus Christi 2009, no pet.); *see also State v. Hanrahan,* No. 10-11-00155-CR*, 2012 Tex. App. LEXIS 1271 (Tex. App.—Waco Feb. 15, 2012, no pet.) (mem. op., not designated for publication)*; State v. Rothrock,* No. 03-09-00491-CR, 2010 Tex. App. LEXIS 6356 (Tex. App.—Austin August 5, 2010, no pet.)(mem. op., not designated for publication). Consequently, the trial court did not abuse its discretion in granting the motion to suppress, and we affirm that order.

Brian Quinn<br>Chief Justice

Publish.