COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS



| | | |
|---|---|---|
| SAMMY BANEGAS, | § | |
| Appellant, | | No. 08-17-00224-CR |
| | § | |
| v. | | Appeal from the |
| | § | |
| THE STATE OF TEXAS, | | Criminal District Court No. 1 |
| | § | |
| Appellee. | | of El Paso County, Texas |
| | § | |
| | | (TC# 20160D00740) |
| | § | |

## **O P I N I O N**

Appellant Sammy Banegas pled guilty pursuant to a plea bargain agreement to one count of the second-degree felony offense of delivery of a controlled substance, namely cocaine, in an amount over one gram, but less than four grams, and was sentenced to four years in prison. In his sole issue on appeal, Appellant contends that the trial court erred in denying his motion to suppress evidence that was obtained during a search of his vehicle that he claims resulted from an illegal traffic stop. Finding no error, we affirm the trial court's judgment.

## **FACTUAL AND PROCEDURAL BACKGROUND**

We recite the facts based on the undisputed testimony given during a hearing on Appellant's motion to suppress. At the hearing, Sergeant Horacio Maldonado of the El Paso Police Department testified that his office received an anonymous tip that Appellant was dealing

drugs. In order to corroborate the tip, Sgt. Maldonado ordered surveillance to be conducted at Appellant's residence. On February 11, 2016, the police observed Appellant drive away from his residence, and began following him, first to Anthony, New Mexico, where Appellant traveled down a dirt road, and later to a park in El Paso, where Appellant met with another individual. Suspecting that Appellant had been involved in a drug deal at the park, the police contacted the El Paso County Sheriff's Office for assistance, asking if one of their deputies could find a valid reason to stop Appellant's vehicle, and if the deputy could then attempt to obtain Appellant's consent to search the vehicle.

Shortly thereafter, Deputy Sheriff Jessie Anchondo, who was on duty in the general area at the time, observed a vehicle matching the description given by the police, and began following it. Deputy Anchondo observed that the vehicle had an "obstructed license plate," which was both "muddy" and "old." Deputy Anchondo testified that the mud covering the license plate made it "unreadable" and "obscured," and caused him to be unable to visualize the letters and numbers on the plate. However, Deputy Anchondo testified that he had no reason to believe Appellant had intentionally placed any "after-market substance" or "other device" on the license plate that obscured it, and that the plate instead appeared to have been obscured by "dirt or debris or whatever from travel."[1]

Believing that Appellant had violated the Texas Transportation Code as the result of the obscured license plate, Deputy Anchondo initiated a traffic stop. At the deputy's request, Appellant gave both his verbal and written consent to conduct a complete search of his vehicle.

[1] Although the deputy's car had video equipment that was automatically activated when he turned on his emergency lights to initiate the stop, his office erased the video recording 90 days later in accordance with standard policy, due to the El Paso Police Department's failure to request a copy of it. Appellant does not raise any issues with regard to the destruction of the video recording.

After a search of his vehicle revealed a clear plastic bag hidden under the molding in the console that appeared to contain cocaine, Appellant was arrested. Appellant was subsequently indicted on one count of possession with intent to deliver a controlled substance, in the amount of four grams or more, but less than 200 grams.

Appellant thereafter filed a motion to suppress the evidence that was obtained during the search of his vehicle, contending that the "search was unreasonable because it was conducted pursuant to a warrantless detention without probable cause," and was therefore in violation of his Fourth Amendment rights and the Texas Code of Criminal Procedure. Among other things, Appellant argued that the traffic stop was illegal because Deputy Anchondo did not have a reasonable basis for believing that he had committed a violation of the Transportation Code, asserting that the Code only makes it an offense to intentionally place an item or other material on a vehicle that obscures the license plate. Appellant further argued that there was no evidence that he had engaged in any such intentional conduct, and that in effect, Deputy Anchondo initiated the traffic stop simply because Appellant was driving a vehicle that was "dirty" from traveling on the road. Appellant therefore argued that the subsequent search of his vehicle was also illegal and that the evidence found during the search should be suppressed.

After conducting an evidentiary hearing, the trial court denied the motion, and entered written Findings of Fact and Conclusions of Law. The trial court concluded, among other things, that Deputy Anchondo had "probable cause to stop the Defendant's vehicle based on the violation of Texas Transportation Code Section 504.945(7)(c)," and that Appellant thereafter voluntarily and knowingly consented to the search of his vehicle.

After his motion was denied, Appellant entered into a plea bargain agreement with the

3

State, in which he pled guilty to the lesser included offense of delivery of a controlled substance in an amount over one gram, but less than four grams. At the State's recommendation, the trial court sentenced Appellant to four years in prison. After the trial court denied his motion for new trial, this appeal followed.

## DISCUSSION

In a single issue, Appellant contends that the trial court erred by denying his motion to suppress evidence, arguing that the traffic stop that led to the search of his vehicle was illegal because he did not violate the Transportation Code, and because Deputy Anchondo's mistaken belief that he violated the Code was not objectively reasonable. Appellant contends that the resulting search of his vehicle was therefore unlawful under the Fourth Amendment and that the evidence of the search should have been suppressed under Article 38.23 of the Texas Code of Criminal Procedure.

### *Standard of Review*

In reviewing a trial court's ruling on a motion to suppress evidence, we use a "bifurcated standard of review: (1) giving almost total deference to a trial court's determination of historical facts and application of law to fact questions that turn on credibility and demeanor, and (2) reviewing *de novo* application of law to fact questions that do not turn upon credibility and demeanor." *Garcia v. State*, 43 S.W.3d 527, 530 (Tex.Crim.App. 2012), *citing Guzman v. State,* 955 S.W.2d 85, 89 (Tex.Crim.App. 1997); *see also State v. Martinez*, 570 S.W.3d 278, 281 (Tex.Crim.App. 2019). Additionally, we review *de novo* pure questions of law. *Martinez,* 570 S.W.3d at 281; *see also Saenz v. State*, 564 S.W.3d 469, 472 (Tex.App.--El Paso 2018, no pet.), *citing Alford v. State,* 358 S.W.3d 647, 652 (Tex.Crim.App. 2012). We will uphold the trial

4

court's ruling if it is supported by the record and is correct under any theory of law applicable to the case. *State v. Stevens*, 235 S.W.3d 736, 740 (Tex.Crim.App. 2007); *see also Saenz*, 564 S.W.3d at 473.

### *Traffic Stops Require Reasonable Suspicion*

The Fourth Amendment of the United States Constitution and Article I, section 9 of the Texas Constitution protect against unreasonable searches and seizures by government officials. *See In Matter of E.O.E.*, 508 S.W.3d 613, 622 (Tex.App.--El Paso 2016, no pet.), *citing Wiede v. State,* 214 S.W.3d 17, 24–25 (Tex.Crim.App. 2007); *Johnson v. State,* 912 S.W.2d 227, 232–34 (Tex.Crim.App. 1995). Evidence that is seized by police in violation of the Fourth Amendment is subject to the exclusionary rule codified in Article 38.23(a) of the Texas Code of Criminal Procedure.[2] TEX.CODE CRIM.PROC.ANN. art. 38.23(a); *see also State v. Daugherty*, 931 S.W.2d 268, 272–73 (Tex.Crim.App. 1996). When as here, a search has taken place without a warrant, the State bears the burden of establishing that the search and seizure were reasonable. *Amador v. State*, 221 S.W.3d 666, 672-73 (Tex.Crim.App. 2007); *see also Torres v. State*, 182 S.W.3d 899, 902 (Tex.Crim.App. 2005).

A traffic stop for a suspected violation of law is considered a "seizure" of the occupants of the vehicle and therefore must be conducted in accordance with the Fourth Amendment. *Heien v. North Carolina*, 574 U.S. 54, 60 (2014), *citing Brendlin v. California,* 551 U.S. 249, 255–259

---

[2] Article 38.23(a) of the Code provides that: "No evidence obtained by an officer or other person in violation of any provisions of the Constitution or laws of the State of Texas, or of the Constitution or laws of the United States of America, shall be admitted in evidence against the accused on the trial of any criminal case. In any case where the legal evidence raises an issue hereunder, the jury shall be instructed that if it believes, or has a reasonable doubt, that the evidence was obtained in violation of the provisions of this Article, then and in such event, the jury shall disregard any such evidence so obtained." TEX.CODE CRIM.PROC.ANN. art. 38.23(a).

(2007). A police officer may lawfully initiate a traffic stop without a warrant if he has specific articulable facts that, when combined with rational inferences from those facts, would give the officer a reasonable suspicion that the individual has engaged in criminal activity, or may soon be so engaged in such activity. *Garcia*, 43 S.W.3d at 530, *citing Woods v. State*, 956 S.W.2d 33, 35, 38 (Tex.Crim.App. 1997). The standard for determining whether reasonable suspicion exists is an objective one; as such, if there is an objective basis for the stop, the subjective intent of the officer conducting the stop is irrelevant. *Garcia*, 43 S.W.3d at 530; *see also Ford v. State*, 158 S.W.3d 488, 492-93 (Tex.Crim.App. 2005); *State v. Five Thousand Five Hundred Dollars in U.S. Currency*, 296 S.W.3d 696, 703 (Tex.App.--El Paso 2009, no pet.). Accordingly, when, as here, an officer admittedly makes a so-called "pretext" stop of an individual for a traffic violation, but his subjective intent is in reality to investigate the individual on another unrelated offense, the traffic stop is considered valid if the officer had a reasonable basis to believe that the individual committed the traffic violation. *Garcia v. State,* 827 S.W.2d 937, 943–44 (Tex.Crim.App. 1992).

### *Objectively Reasonable Mistakes of Fact and Law do not Vitiate Reasonable Suspicion*

In determining whether an officer had reasonable suspicion to detain an individual or probable cause to arrest, the Court of Criminal Appeals has long held that when a police officer is mistaken about the facts that caused him to believe that a defendant was in violation of a statute, the mistake "will not vitiate an officer's actions in hindsight so long as his actions were lawful under the facts as he reasonably, albeit mistakenly, perceived them to be." *Robinson v. State*, 377 S.W.3d 712, 720–21 (Tex.Crim.App. 2012). Until recently, Texas courts did not view mistakes of law in the same light, and instead held the view that an "officer's mistake about the law, or about the legal significance of undisputed facts, *even if* eminently reasonable, cannot serve to

6

provide probable cause or reasonable suspicion; it cannot, in other words, validate an otherwise invalid seizure." [Emphasis in orig.]. *Robinson*, 377 S.W.3d at 722; *see also Abney v. State*, 394 S.W.3d 542, 549–50 (Tex.Crim.App. 2013).

However, in 2014, the United States Supreme Court expressly held that both mistakes of fact and mistakes of law, if objectively reasonable, do not invalidate a traffic stop for Fourth Amendment purposes, as mistakes of law are "no less compatible with the concept of reasonable suspicion" than are mistakes of fact. *Heien*, 574 U.S. at 54. As the Court in *Heien* recognized, an officer in the field is often required to make "factual assessments 'on the fly,'" and may also be suddenly confronted with a situation requiring the application of an unclear statute. *Heien*, 574 U.S. at 66. Under such circumstances, "reasonable men" may make mistakes with regard to both their perception of the facts as well as their interpretation of the law. *Id*. The Court, however, cautioned that the Fourth Amendment tolerates only "objectively reasonable" mistakes of either fact or law. *Id.* at 66.

In *Heien*, the defendant was pulled over for driving with only one functioning brake light, and a subsequent search of his vehicle revealed the presence of cocaine. *Id.* at 57-58. Prior to trial, the defendant moved to suppress the evidence of the search, contending that North Carolina's vehicle code only required one working brake light. *Id*. at 58. Although the state's highest court ultimately held that only one brake light was required, the Supreme Court held that the stop was not invalid, as the officer's belief that the Code required two working brake lights was *objectively* reasonable at the time of the stop. *Id*. at 58-59, 66. In reaching this conclusion, the Court found it significant that the code itself was not clearly written as it had conflicting provisions, and that the code had not yet been interpreted by any of the state's courts at the time of the stop. *Id*. at 66-

7

Although the Court of Criminal Appeals has not yet expressly adopted the rule set forth in *Heien*, it did cite the *Heien* opinion approvingly in *State v. Cortez*, 501 S.W.3d 606, 608-609 (Tex.Crim.App. 2016). In *Cortez*, the Amarillo Court of Appeals held that a police officer's traffic stop was invalid because he had misinterpreted a provision in the Transportation Code. *State v. Cortez*, 482 S.W.3d 176, 182–84 (Tex.App.--Amarillo 2015), *vacated*, 501 S.W.3d 606 (Tex.Crim.App. 2016). However, in doing so, the Amarillo court relied solely on *Robinson* and *Abney* in which the Court of Criminal Appeals previously held that mistakes of law do not validate an otherwise illegal traffic stop, and failed to consider the State's argument that the officer's mistake of law was objectively reasonable under *Heien*. *Cortez*, 501 S.W.3d at 609, *citing Cortez*, 482 S.W.3d at 183. After granting the State's Petition for Discretionary Review, the Court of Criminal Appeals remanded the matter to the Amarillo court to consider the State's argument under *Heien*. *Cortez*, 482 S.W.3d at 182–84. Although the Court did not expressly hold that it was overruling its prior holdings in *Robinson* and *Abney* in favor of *Heien*, the Court did note that those two cases were handed down in 2012 and 2013 respectively, prior to the Supreme Court's 2014 holding in *Heien*.[3] *Cortez,* 501 S.W.3d at 609.

In addition, we note that several of our sister courts have applied the *Heien* opinion in determining whether a police officer had reasonable suspicion to conduct a traffic stop, and have concluded that an officer's objectively reasonable mistake of law in conducting the stop does not

---

[3] On remand, the Amarillo Court specifically considered and rejected the State's argument that the officer's mistaken interpretation of the law was objectively reasonable under *Heien*. *State v. Cortez*, 512 S.W.3d 915, 926 (Tex.App.--Amarillo 2017), *aff'd*, 543 S.W.3d 198 (Tex.Crim.App. 2018). The Court of Criminal Appeals affirmed that decision, agreeing that the officer "was not objectively reasonable in his belief that a violation of the law had been committed by [the Appellant.]." *Cortez*, 543 S.W.3d at 201 n.5, 209.

8

render it invalid for Fourth Amendment purposes. *See, e.g.*, *Williams v. State*, No. 05-18-00727-CR, 2019 WL 1872925, at *1 (Tex.App.--Dallas Apr. 26, 2019, no pet.)(mem. op., not designated for publication), *citing McCurtain v. State*, No. 05-15-00959-CR, 2016 WL 3913043, at *1 (Tex.App.--Dallas July 14, 2016, no pet.)(mem. op., not designated for publication); *Babel v. State*, 572 S.W.3d 851, 856 (Tex.App.--Houston [14th Dist.] 2019, no pet.); *State v. Varley*, 501 S.W.3d 273, 281-82 (Tex.App.--Fort Worth 2016, pet. ref'd); *see also Moreno v. State*, No. 08-16-00003-CR, 2019 WL 698091, at *5 (Tex.App.--El Paso Feb. 20, 2019, no pet.)(not designated for publication)(concluding that an officer's mistake of law in conducting a search of the curtilage of a residence was not objectively reasonable under the standards set forth in *Heien*); *but see State v. Tercero,* 467 S.W.3d 1, 10-11 (Tex.App.--Houston [1st Dist.] 2015, pet. ref'd)(declining to apply *Heien's* "reasonable mistake of law" exception to mandatory blood draw procedure because it was "inconsistent with the text of article 38.23").

Accordingly, in considering Appellant's argument that his traffic stop was illegal, we first consider whether the Code makes it an offense to drive a vehicle with license plates inadvertently obscured by mud, and if not, whether Deputy Anchondo had an objectively reasonable, albeit mistaken belief, that the Code did in fact criminalize such conduct.

**Analysis**

Section 504.945(a) of the Texas Transportation Code provides in relevant part that "A person commits an offense if the person attaches to or displays on a motor vehicle a license plate that . . . (5) has blurring or reflective matter that significantly impairs the readability of the name of the state in which the vehicle is registered or the letters or numbers of the license plate number at any time . . . or (7) has a coating, covering, protective substance, or other material that:   (A)

9

distorts angular visibility or detectability; (B) alters or obscures one-half or more of the name of the state in which the vehicle is registered; or (C) alters or obscures the letters or numbers of the license plate number or the color of the plate. TEX.TRANSP.CODE ANN. § 504.945(a)(5)(7). Appellant appears to acknowledge that mud may be considered "other material" under Subsection (a)(7) of the Code, and that his license plates were in fact obscured by mud. However, Appellant contends that the Code only applies in situations in which a person has intentionally placed an item on a vehicle, such as a license plate frame, that obscures the vehicle's plates. He then points out that Deputy Anchondo testified at his hearing that he did not believe Appellant had engaged in any such intentional conduct, and that he instead believed the vehicle's license plates had been inadvertently obscured by "dirt or debris or whatever from travel."

Although there is nothing in the Code itself that expressly provides that a person must deliberately or intentionally place an item on a vehicle in order to commit an offense, Appellant points to the prefatory phrase used in Subsection 504.945(a) of the Code, which provides that a person commits an offense if he "attaches" or "displays" on a motor vehicle one of the prohibited items or materials that alter or obscure the vehicle's license plate. TEX.TRANSP.CODE ANN. § 504.945(a). Appellant contends that both of those terms imply intentional conduct, citing to Webster's Third New International Dictionary, which defines the term "attach" to mean "to make fast or join," and the term, "display," to mean "to spread before the view: exhibit to the sight or mind . . . ." Appellant contends that by using those terms, the Legislature only intended to criminalize situations in which a person has deliberately placed items or materials, such as "frames, plastic, or tint . . . on, over, or around a license plate that partially blocked some of the information on it." *See, e.g., State v. Johnson*, 219 S.W.3d 386, 387 (Tex.Crim.App. 2007)(interpreting prior

10

version of the Code to apply to situations in which a person placed a license plate frame on a vehicle that obscured a portion of the design on the plate).

The State acknowledges that the Legislature's use of the term "attach" does in fact connote intentional or conscious conduct. However, the State contends that the term "displays," does not imply intentional or purposeful action, and that the term is instead broad enough to include situations in which a person inadvertently drives a vehicle on a public roadway with an obscured license plate, regardless of whether he intentionally caused the obstruction.

Considering both the plain meaning of the terms used in the Code, together with the purpose that the Code serves, we agree with the State on this issue. *See generally Spence v. State,* 325 S.W.3d 646, 650-51 (Tex.Crim.App. 2010)(court construes undefined terms in a statute in accordance with their "plain meaning" and in in doing so, may consider the general purpose of the statute to determine whether the construction "accomplishes the purpose of the statute."); *see also* TEX.GOV'T CODE ANN. § 311.011(a)("Words and phrases shall be read in context and construed according to the rules of grammar and common usage.").

### *The Plain Meaning of the Code*

In construing the meaning of the term, "displays" as used in the Code, we find the Fifth Circuit Court of Appeals' opinion in *United States v. Williams*, 307 Fed.Appx. 855 (5th Cir. 2009) to be instructive. In *Williams*, the defendant was driving his sister's car, which had a license plate that was obscured by a broken piece of trunk trim, when a police officer pulled him over for driving with an obscured license plate in violation of the Texas Transportation Code. *Id.* at 857. After a search of the car revealed crack cocaine, the defendant moved to suppress the evidence of the search, arguing that the traffic stop was illegal, as he had not committed a violation of the Code.

*Id*. at 857. In particular, the defendant argued, as Appellant does, that the Code required a "knowing attachment or display of a covering that obscures the numbers on a license plate," and there was no evidence that "he created or was even aware of the obstruction." *Id.* The Court disagreed, citing to the Oxford English Dictionary, which defines the verb "display" as "[t]o open up or expose to view, exhibit to the eyes, show." *Id., citing* OXFORD ENGLISH DICTIONARY (2nd Ed.1989). The Court concluded that, based on this definition, the Code does not require "evidence of the driver's intentional act, beyond driving a car with a displayed obstruction to the license plate." *Id*. at 857, *citing United States v. Contreras-Trevino,* 448 F.3d 821, 822-23 (5th Cir. 2006)(finding a violation of the Texas Transportation Code despite the fact that the plastic license plate frame which caused the obstruction had been attached by the car dealer, not the driver of the vehicle).[4]

We also find instructive our sister court's holding in *Martinez v. State*, 500 S.W.3d 456, 473 (Tex.App.--Beaumont 2016, pet. ref'd). In *Martinez*, the appellant, who had been pulled over for driving with an obscured plate under Section 504.945 of the Transportation Code was unconstitutionally vague because it "fails to clearly identify the persons who the State can prosecute for violating the statute," or in other words, it does not clearly state whether it applies to "an individual who neither owned the car, nor put the plate on it, but whose only involvement is driving" the vehicle with the obscured plates. *Id*. at 472. The Beaumont Court disagreed,

---

[4] Although *Williams* and *Contreras-Trevino* were decided under the prior version of the Code, found at former Section 502.409 of the Transportation Code, we find the analysis set forth therein is equally applicable to the current version of the Code. *Id.* at 857. The former version of the Code was substantially similar to the current version of the Code, making it an offense to attach or display "a coating, covering, protective material, or other apparatus" to a vehicle that alters or obscures license plate. In 2011, the Legislature renumbered and amended this portion of the Code, making it offense to attach or display "a coating, covering protective material, or other material" that alters or obscures a license plate. Act of May 29, 2011, 82nd Leg., R.S., ch. 1296, §§ 159, 223, secs. 504.475, 504.945, 2011 TEX.GEN.LAWS 3617, 3684, 3700-701, current version found at TEX.TRANSP.CODE ANN. § 504.945.

pointing out that the Code expressly states that a person who merely "displays" a "wrong, fictitious, altered, or obscured license plate" commits an offense. *Id.* at 473*, citing* TEX.TRANSP.CODE ANN. § 504.945. The court noted that the plain meaning of the term "displays," as it is commonly defined by a dictionary of ordinary use, means "exhibiting or showing of something[.]" *Id.* at 473, *citing* WEBSTER'S THIRD NEW INT'L DICTIONARY 654 (2002)(defining term "displays," to mean "exhibiting or showing of something."). In turn, the court concluded that a "person who chooses to drive a car bearing an obscured plate on a public road has exhibited or shown the car and the plate that is on the car in public," has in fact displayed an obscured license plate in violation of the Code. *Id.* at 473.

We agree with this reasoning, and we therefore conclude that the plain meaning of the term, "displays," as used in the Code, renders the Code applicable to situation in which a person drives a vehicle with an obscured license plate, regardless of whether the person engaged in any intentional conduct that caused the obstruction.

### *The Purpose of the Code*

We also believe that construing the Code in this manner is consistent with its legislative purpose. As the Court of Criminal Appeals has recognized, the general purpose of the various Transportation Code provisions that regulate the display of license plates is to "facilitate quick and accurate identification of vehicles through the content of their license plates," noting that law enforcement officers in particular have the need to quickly find and read license plates when "trying to identify a moving vehicle."[5] *Spence* 325 S.W.3d at 651; *see also Johnson*, 219 S.W.3d

---

[5] Although the Court in *Spence* was considering a provision in the Transportation Code relating to the placement of a license plate, it noted that"[s]everal other Transportation Code sections also facilitate this goal," including the Code provisions that require license plates to be free from "blurring or reflective matter, so that they are 'plainly visible.'" *Id.* at 651 & n.21 (citing to former Transportation Code provision relating to driving with an altered or obscured

at 387-88 (recognizing that one purpose of the Code in making it an offense to drive with a obscured plate is to help facilitate the quick detection of counterfeit plates).

As the primary goal of these Transportation provisions is to ensure that license plates are easily readable for law enforcement purposes, we see no logical reason to distinguish between situations in which a license plate has become inadvertently obscured by mud or dirt from road travel, and situations in which a person has intentionally placed an item on a vehicle that obscures the plate. In both situations, it is the obstruction itself that hinders an officer's ability to be able to quickly and easily read the information on the license plate, and which thereby constitutes the true gravamen of the offense. *See, e.g.*, *Jenkins v. State*, No. 01-05-00299-CR, 2006 WL 23323, at *3 (Tex.App.--Houston [1st Dist.] Jan. 5, 2006, pet. ref'd)(mem. op., not designated for publication)(finding that officer had a reasonable basis for conducting a traffic stop, where appellant's license plate was difficult to read due to the lack of a license plate light on the car and dirt on the license plate); *Jones v. State*, No. 05-01-01153-CR, 2002 WL 1613711, at *3-*4 (Tex.App.--Dallas July 23, 2002, no pet.)(not designated for publication)(finding sufficient evidence to support the legality of a traffic stop where officer testified that the vehicle's license plate was obscured by mud making it unreadable); *see also United States v. Casas*, EP-99-CR-1070-DB, 1999 WL 33290609, at *5 (W.D. Tex. Nov. 10, 1999)(interpreting prior version of the Transportation Code to prohibit the display of an "unclean license plate."); *Johnson*, 219 S.W.3d at 389 (Johnson, J., concurring)(recognizing that the Transportation Code requires that license plates be "kept clean enough to read.").

And finally, we find it significant that the Code itself contains a list of specific factual

_____

license plate).

14

situations which the Legislature has determined do not constitute an offense, including situations in which a person is driving a vehicle with a license plate that is obscured by a trailer hitch, a wheelchair lift or carrier, or a bicycle or motorcycle rack has been attached to the vehicle in a normal or customary manner. TEX.TRANSP.CODE ANN. § 504.945(c). This list, however, does not include the situation we consider today, in which a person is driving a vehicle with a license plate that has become obscured by mud, dirt, or other debris caused by road travel. As a general rule of statutory interpretation, the Legislature's "express mention or enumeration of one person, thing, consequence, or class is tantamount to an exclusion of all others." *State v. Schunior*, 506 S.W.3d 29, 38 (Tex.Crim.App. 2016), *citing Ex parte McIver*, 586 S.W.2d 851, 856 (Tex.Crim.App. [Panel Op.] 1979). We therefore presume that if the Legislature had intended to exclude from the Code situations in which a person was driving a vehicle with license plates obscured by road grime, it would have done so. *Cornet v. State,* 359 S.W.3d 217, 222 (Tex.Crim.App. 2012)(explaining that "when the Legislature desires to convey a certain level of specificity within a statutory provision, it knows how to do it"); *see also State v. Sutton*, 499 S.W.3d 434, 437 (Tex.Crim.App. 2016)(where criminal statute included a list of school district employees to which the statute applied, but did not include officers on that list, court concluded that the Legislature did not intend for the statute to police officers).

Accordingly, we conclude that the Legislature intended to make it an offense under Section 504.945(a)(7) of the Transportation Code to drive a vehicle with a license plate inadvertently obscured by mud caused by road travel.

### Deputy Anchondo had an Objectively Reasonable Belief that Appellant was in Violation of the Transportation Code

Moreover, even if we were to construe the Transportation Code otherwise, and conclude

15

that Deputy Anchondo was mistaken in his belief that the Code made it an offense to drive a vehicle with license plates inadvertently obscured by mud from road travel, we would nevertheless find that any such mistake of law was objectively reasonable under the Supreme Court's holding in *Heien*. *Heien,* 574 U.S. at 54, 60-61. As set forth above, the Code itself does not contain any clear language indicating that a person must deliberately place an item on a vehicle in order to commit an offense, nor did our research reveal the existence of any appellate authority interpreting the Code in that manner. To the contrary, the existing case law, as surveyed above, supports a reasonable conclusion that no such deliberate conduct is required, and that instead, a person may commit an offense by driving a vehicle with plates that have been inadvertently obscured by road debris.

Accordingly, any mistake of law that Deputy Anchondo made in determining that Appellant committed an offense under the Code was objectively reasonable, and we therefore conclude that he had reasonable suspicion to stop Appellant's vehicle.[6] *See, e.g., McCurtain,* 2016 WL 3913043, at *2 (officer's belief that appellant violated the Transportation Code was reasonably objective absent any definition in the Code or case law clearly contradicting the officer's interpretation of the Code).

## CONCLUSION

Because we conclude that the traffic stop was valid, we hold that the trial court did not err in denying Appellant's motion to suppress. The trial court's judgment is affirmed.

November 25, 2019

---

[6] In light of this conclusion, we need not consider the State's alternative argument that "intervening factors," including Appellant's consent to the search of his vehicle, attenuated the connection between any illegality in the traffic stop and the discovery of the cocaine in his vehicle.

ANN CRAWFORD McCLURE, Senior Judge

Before Rodriguez, J., Palafox, J., and McClure, Senior Judge
McClure, Senior Judge (Sitting by Assignment)

(Do Not Publish)